(No. 58131.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JEFFERY MOLSTAD, Appellee.

*Opinion filed February 1, 1984.—Rehearing denied March 30, 1984.*

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Michael B. Weinstein and Mark Rotert, Assistant Attorneys General, of Chicago, and Michael E. Shabat, Joan S. Cherry, Paula Carstensen, Peter M. Delongis, and Kevin Sweeney, Assistant State's Attorneys, of counsel), for the People.

J. E. McKeigue, of Hazel Crest, for appellee.

JUSTICE CLARK delivered the opinion of the court:

Defendant, Jeffery Molstad, was arrested on April 15, 1981, and charged with two counts of aggravated battery, armed violence, and criminal damage to property. The armed-violence count was dismissed prior to trial, but Molstad was found guilty of the remaining charges on September 4, 1981, after a bench trial in the circuit court of Cook County. Other individuals were convicted along with Molstad, but these codefendants have

not appealed. The trial judge denied Molstad's post-trial motion for a new trial to introduce the exculpatory testimony of five codefendants. Molstad was sentenced to 30 months' felony probation and ordered to pay $500 restitution for the criminal-damage-to-property conviction. The appellate court vacated the conviction and remanded the case for an evidentiary hearing (112 Ill. App. 3d 819), and we granted the State's petition for leave to appeal. 87 Ill. 2d R. 315(a).

On April 2, 1981, an individual named Thomas Bonner was seated in his automobile in the parking lot of the Little Giant's Liquor Store in Midlothian. Bonner left the car and spotted Michael Patterson in a van, and Bonner punched Patterson in the face and dragged him out onto the pavement. Patterson removed his coat and began to fight. Bonner punched Patterson several times and kicked him in the face. Defendant, Jeffery Molstad, a bystander, broke up the fight between Bonner and Patterson, but Patterson was hospitalized with a broken nose inflicted by Bonner. Patterson vowed revenge as he lay on the pavement.

At approximately 11:50 that evening, Bonner was driving near 145th and Kilpatrick streets with his sister Sandy, and his girlfriend, Wendy Albritton, seated in the front seat of the car. An orange pickup truck and a blue station wagon pulled in front of Bonner, forcing him to stop, and a brown pickup truck blocked him from behind. Between 8 and 10 persons jumped out of the pickup trucks and station wagon. Several individuals began attacking Bonner's car with baseball bats and lead pipes.

Sandy Bonner testified that she began screaming and ran to neighboring houses to seek assistance. Wendy Albritton testified that she got out and watched the attackers destroying Bonner's car. Albritton testified that she saw Molstad striking the back window of the car. Sandy Bonner identified several of the assailants in open court,

but she did not testify that Jeffery Molstad was present. Albritton testified that she also observed David Kent, Mike Guerra (actual name, Geary), David Kroll and Mike Schmidt demolishing the car. Geary opened the front door of the car and hit Thomas Bonner in the head with a baseball bat.

Thomas Bonner testified that he escaped from the car after he was hit with the bat. He testified that he ran from his attackers and fell into a ditch, where he was struck repeatedly with lead pipes and baseball bats. Bonner was hospitalized for six days and sustained multiple bruises, lacerations of the skull and a bone fracture. He testified that he was still troubled by headaches at the time of the trial.

Jeffery Molstad denied that he was present during the attack on Bonner. Molstad testified that he returned home between 10 and 10:30 p.m. and that he went to bed shortly thereafter. His testimony was corroborated by that of his parents. The codefendants identified by Wendy Albritton did not present a defense or testify at trial.

Molstad's lawyer filed a post-trial motion before sentencing to reopen the case or, in the alternative, for a new trial. Molstad's counsel offered the affidavits of convicted codefendants David Kent, David Kroll, Jose Flores, Mike Schmidt, and one acquitted codefendant, Edward Kroll. The affidavits stated that Molstad had not been present at the time of the attack on Bonner and the automobile. Molstad argues that this newly discovered evidence should be the basis for a new trial because the evidence contained in the affidavits was not available at the time of trial. The codefendants would have had to admit they were present during the attack on Bonner in order to give competent testimony as to who was at the scene of the attack. Such testimony would have been an admission against the interests of

the codefendants.

Three issues are presented on appeal: (1) whether Molstad was proved guilty beyond a reasonable doubt by the testimony of Wendy Albritton; (2) whether the testimony of five of Molstad's codefendants should provide the basis for a new trial; (3) whether the trial court erred in ordering Molstad to pay $500 restitution based on the criminal-damage-to-property charge, without considering out-of-pocket expenses to the victim and the defendant's ability to pay.

We turn now to the first issue raised by Molstad: whether the testimony of Wendy Albritton established Molstad's guilt beyond a reasonable doubt. Albritton was the only witness at trial who testified that Molstad took part in the attack on Bonner and the automobile. The positive identification by one credible witness is normally sufficient to sustain a conviction (*People v. Boney* (1963), 28 Ill. 2d 505, 509). Molstad maintains that Albritton's testimony is not credible, because it is highly unlikely that she calmly stood next to the vehicle and noted exactly who was present while the gang was destroying the auto and beating her boyfriend.

In a bench trial, the court is the trier of fact, and it is the function of the court to determine the credibility of witnesses and the weight that should be given to their testimony. (*People v. Manion* (1977), 67 Ill. 2d 564, 577-78.) A reviewing court should not substitute its judgment for that of the trier of fact unless the evidence is so improbable as to raise a reasonable doubt of guilt. (*People v. Stringer* (1972), 52 Ill. 2d 564, 568.) The State maintains that Albritton's testimony is not palpably improbable. She had met Molstad on about 10 occasions, and was familiar with his face.

While we do not question the good faith of the prosecution witness, we believe the circumstances, considered together, tend to impair the weight to be given to the

identification of Molstad. (See *People v. Peck* (1934), 358 Ill. 642, 648-49.) A better determination of Molstad's guilt could be made if Albritton's testimony could be balanced against the testimony of Molstad's codefendants. This is particularly true since the codefendants prepared and delivered their affidavits to Molstad's attorney after their conviction but before they were sentenced, when their own credibility could be a factor in their ultimate penalty. (*People v. LeMorte* (1919), 289 Ill. 11, 23.) We therefore conclude that Albritton's testimony did establish Molstad's guilt beyond a reasonable doubt, but this testimony should now be balanced against the subsequently acquired testimony of other individuals who were at the scene of the crime, which is the second issue presented here. The standard for a new trial in Illinois is set forth in *People v. Baker* (1959), 16 Ill. 2d 364, where this court noted:

> "To warrant a new trial, the new evidence must be of such conclusive character that it will probably change the result on retrial, that it must be material to the issue but not merely cumulative, and that it must have been discovered since the trial and be of such character that it could not have been discovered prior to trial by the exercise of due diligence." 16 Ill. 2d 364, 374.

We will first consider what is chronologically the first part of the test, whether the evidence was newly discovered. The State maintains that the evidence was not newly discovered because defendant Molstad knew of the evidence before trial. However, the State has not disputed the fact that the affidavits were not prepared until after the guilty verdict and before the sentencing hearing. Thus, at the time of trial, the only testimonial evidence that Molstad could offer to counter Albritton's was his testimony that he was not present at the scene of the attack. Molstad's codefendants did not present their testimony concerning Molstad's whereabouts at trial because such testimony would

have incriminated them. The testimony of Molstad's codefendants clearly qualifies as newly discovered evidence.

The affidavits submitted as the basis for a new trial could not have been discovered with the exercise of due diligence. The record reveals that the defendants were acquainted with each other, and presumably due diligence on the part of Molstad or his counsel could have ascertained what posture the codefendants would have taken at trial. However, no amount of diligence could have forced the codefendants to violate their fifth amendment right to avoid self-incrimination (U.S. Const., amend. V (fifth amendment right to avoid self-incrimination made applicable to the States by the fourteenth amendment)) if the codefendants did not choose to do so.

The State maintains that the evidence is merely cumulative, and should not provide the basis for a new trial. Claiming evidence is cumulative involves a determination that such evidence adds nothing to what is already before the jury. (*Ostendorf v. International Harvester Co.* (1982), 89 Ill. 2d 273, 284.) It is difficult to see how the admission of the five affidavits would not produce new questions to be considered by the trier of fact. The testimony of the codefendants goes to an ultimate issue in the case: Who was present at the time of the attack on Bonner and the automobile? We believe that the evidence offered as a basis for a new trial is not merely cumulative. Although Molstad offered alibi testimony at trial, the introduction of five affidavits at the post-trial stage raises additional questions concerning the trial court's verdict.

Finally, the party seeking a new trial must establish that the newly discovered evidence would have been likely to produce a different result in the trial. It appears that a different result is probable if the trier of fact considers the testimony of Molstad's codefendants. The trial court would have to balance the testimony of Wendy Albritton with the defendant's own denial of his presence, the testimony of

his parents that he was with them at the time, and that of five other individuals who claim that Molstad was not present. We also note that Molstad broke up the fight between Bonner and Patterson. Molstad told Bonner that the police would apprehend him if he did not leave the scene of the fight. Of course, this does not mean that Molstad is innocent, merely that all of the facts and surrounding circumstances, including the testimony of the codefendants, should be scrutinized more closely to determine the guilt or innocence of Molstad. Molstad has met the criteria set forth in *People v. Baker* (1959), 16 Ill. 2d 364, 374, and we agree that the trial judge abused his discretion in denying defendant's motion for a new trial to consider the newly discovered evidence presented at the post-trial hearing.

The State maintains that counsel for Molstad should have moved for a severance of the defendants, rather than allowing Molstad to be tried in the same proceeding with the other defendants. In general, defendants jointly indicted should be jointly tried unless fairness to one of the defendants requires a separate trial (*People v. Lindsay* (1952), 412 Ill. 472, 480), but mere apprehensions of prejudice are not sufficient grounds for a separate trial (*People v. Yonder* (1969), 44 Ill. 2d 376, 386). Motions for severance are commonly granted when the defenses presented by codefendants are antagonistic to each other. (*People v. Lee* (1981), 87 Ill. 2d 182, 187.) This court stated in *Lee* that "[c]ounsel is not always privy to a codefendant's trial strategy and may not know for certain whether codefendant will choose to take the stand to implicate a defendant." 87 Ill. 2d 182, 188.

In the case at bar, it appears that Molstad's counsel should have made a motion for severance prior to trial, but it is impossible to speculate as to whether such a motion would have been granted. Although the State is correct in asserting that such a motion was warranted, hindsight is always more accurate than foresight, and we fail to see

why Molstad should be penalized for what was arguably an improper trial strategy by his attorney. If Molstad's attorney had obtained the five affidavits before trial, a motion for severance would have been warranted, but based on the facts in this case, the absence of a timely motion for severance is not a persuasive reason to deny Molstad a new trial.

In view of our disposition of this case, we need not reach the question of whether Molstad should be held liable for restitution due to criminal damage to property. We agree with the appellate court's reasoning, but we feel that Molstad should be granted a new trial, rather than an evidentiary hearing. We therefore conclude that Molstad should be given a new trial based on the new evidence contained in the affidavits of the codefendants.

*Judgment affirmed,*
*as modified.*