# Illinois Official Reports

## Appellate Court

---

## *People v. Coats*, 2021 IL App (1st) 181731

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LESHAWN COATS, Defendant-Appellant. |
| District & No. | First District, Second Division<br>No. 1-18-1731 |
| Filed | March 23, 2021 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-CR-14193; the Hon. Vincent M. Gaughan, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | James E. Chadd, Douglas R. Hoff, and Anna C. Carlozzi, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Tasha-Marie Kelly, and Sara McGann, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE COBBS delivered the judgment of the court, with opinion.<br>Presiding Justice Fitzgerald Smith and Justice Pucinski concurred in the judgment and opinion. |

**OPINION**

¶ 1     Following a 2014 bench trial, defendant-appellant, Leshawn Coats,[1] was convicted of being an armed habitual criminal (720 ILCS 5/24-1.7(a) (West 2012)), armed violence (*id.* § 33A-2(a)), and possession of a controlled substance (heroin) with intent to deliver (720 ILCS 570/401(a)(1)(A), (c)(1) (West 2012)), for which he was sentenced to an aggregate of 22 years' imprisonment. He later filed a *pro se* petition for postconviction relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)), which was summarily dismissed. Defendant now appeals that dismissal, arguing that (1) his petition made an arguable claim of ineffective assistance of trial counsel for failing to call a witness and for failing to investigate and impeach a police officer's testimony at trial and (2) his petition made an arguable claim that the State's failure to disclose a police officer's history of complaints constituted a violation of *Brady v. Maryland*, 373 U.S. 83 (1963). For the following reasons, we reverse and remand for second-stage proceedings.

¶ 2                                            I. BACKGROUND

¶ 3     On June 27, 2013, defendant was arrested after Chicago police officers, including Officer Edwin Utreras, executed a search warrant at a basement apartment. He was charged with being an armed habitual criminal (count I), armed violence (count II), and three counts of possession of a controlled substance with intent to deliver (between 15 to 100 grams of heroin, between 1 to 15 grams of heroin, and between 1 to 15 grams of cocaine) (counts III through V). At the bench trial, two witnesses testified: Officer Utreras for the State and Kadesha Joyce, defendant's girlfriend, for the defense.

¶ 4     Officer Utreras testified that on the morning of June 27, 2013, he and a team of police officers executed a search warrant for a basement apartment located at 755 South Kilbourn Avenue in Chicago. When no one answered the team's knocks on the door to the basement apartment, they forced entry. Four individuals were subsequently detained. Officer Utreras and his team approached a locked room in the rear of the apartment. They knocked on the door, and Officer Utreras heard movement inside the room, but no one answered. Officer Utreras's partner forced entry into the locked room. Officer Utreras observed a woman, later identified as defendant's girlfriend, Kadesha Joyce, on the bed. He also observed a man, later identified as defendant, holding a gun in his left hand and in the act of placing two plastic bags on the window ledge. Officer Utreras testified that he was 10 to 15 feet from the window ledge. He observed that one plastic bag was black and the other was tan.

¶ 5     Defendant was detained and read his *Miranda* rights. See *Miranda v. Arizona*, 384 U.S. 436 (1966). According to Officer Utreras, defendant blurted out "You got me" and confirmed that he lived in the basement apartment with Joyce.

¶ 6     Officer Utreras recovered the two bags and the gun, a .45-caliber semiautomatic, from the window ledge. He testified that the black bag contained 92 smaller bags of suspect heroin and that the tan bag contained 54 smaller bags of suspect crack cocaine. Also recovered from the bedroom was a clear plastic bag containing nine bags of suspect heroin found in a small refrigerator, a green bag containing suspect cannabis, ammunition, and narcotics packaging

---

[1]We note that defendant's first name is spelled as both "Leshawn" and "Lashawn" throughout the record, but it is spelled here as reflected on the notice of appeal.

material. Inside a pair of men's pants was a state identification card with the name Leshawn Coats, a set of keys to the bedroom door, and $421 in cash. Inside a pair of tan boots was $180 in cash.

¶ 7 On cross-examination, Officer Utreras testified that the search warrant was for a person named "Shaky Shawn." He stated that, when he saw defendant at the window, he said "Let me see your hands." He denied that the weapon and the bags were recovered outside in the gangway and that the window was ever opened. He testified that the state identification card reflected a different address.

¶ 8 The parties stipulated to the following. Defendant had prior convictions for aggravated robbery (2004) and robbery (1994). Maureen Bommarito, a forensic chemist at the Illinois State Police crime lab, would testify, if called, that six of the nine bags of suspect heroin found in the refrigerator tested positive for 1.2 grams of heroin "out of a total weight of 1.2 grams." She would also testify that 12 of the 54 bags of suspect crack cocaine tested positive for 1.1 grams of cocaine, out of a total weight of 4.6 grams. She also analyzed 73 of the 92 bags of suspect heroin defendant was holding, which tested positive for 15.2 grams of heroin, out of a total weight of 19.2 grams.

¶ 9 After the State rested, defendant moved for a directed finding, which the court denied.

¶ 10 Kadesha Joyce testified that on June 27, 2013, she lived at 755 South Kilbourn Avenue with her grandmother, father, sister, and two brothers. Defendant did not live in the apartment and rarely stayed there with her. Her bedroom had two windows, one of which opened to the sidewalk outside. Kadesha and defendant were sleeping in the bedroom when the police kicked down the door. Defendant was not holding a gun or drugs by the window. She did not hear anything prior to the police kicking in the door.

¶ 11 Several officers entered the room, handcuffed defendant and Kadesha, and brought them into the living room. Kadesha testified that 20 to 25 minutes after the police entered her bedroom, she heard them say "it's in the gangway." When she heard this, she asked, "Did you say it's in the gangway?" and an officer responded, "Shut the f*** up b***."

¶ 12 The trial court found defendant guilty of being an armed habitual criminal, armed violence, and two counts of possession of a controlled substance (heroin) with intent to deliver but not guilty of possession of a controlled substance (cocaine) with intent to deliver. Defendant filed a motion for a new trial, which the court denied. After merging certain counts, the court sentenced defendant to consecutive terms of 7 years in prison on the armed habitual criminal count and 15 years in prison on the armed violence count, for a total of 22 years' imprisonment.

¶ 13 Defendant challenged his convictions on direct appeal, arguing they violated the one-act, one-crime rule because they were predicated on the same physical act of gun possession. This court affirmed defendant's convictions. *People v. Coats*, 2016 IL App (1st) 142028-U. Defendant then filed a petition for leave to appeal in the supreme court, which was allowed. The supreme court affirmed this court's judgment. *People v. Coats*, 2018 IL 121926.

¶ 14 On April 4, 2018, defendant filed a *pro se* petition for postconviction relief in the trial court. In his petition, defendant claimed that his trial counsel was ineffective for failing to present Dakota Joyce, Kadesha's sister, as a witness and for failing to investigate and impeach Officer Utreras. He further claimed that the State committed a *Brady* violation by failing to disclose the history of complaints filed against Officer Utreras.

¶ 15    With respect to Dakota Joyce, defendant specifically alleged that he disclosed to his trial counsel several eyewitnesses who were "material[,] available[,] and competent" to testify on his behalf. He "disclosed" to counsel Dakota Joyce and Kadesha Joyce as witnesses who could testify that the drugs and the gun, allegedly found in the apartment, were, in fact, found in the gangway. Trial counsel stated that he would locate, interview, and subpoena both witnesses to testify, but he failed to do so.

¶ 16    Defendant attached several documents to his petition, including affidavits from himself and Dakota Joyce. In his affidavit, defendant averred the following. Consistent with allegations in his petition, defendant averred that he disclosed to counsel Dakota Joyce and Kadesha Joyce as individuals who were eyewitnesses and who would testify on his behalf. As in his petition, defendant averred that counsel committed to investigate the witnesses and to subpoena them for trial but failed to do so. Additionally, defendant averred that he was never in possession of a gun or drugs on the day in question. After being arrested, he heard Utreras yell to other officers, "it's outside in the gangway." Several officers went out the back door and returned with a gun and two plastic bags. He knew Officer Utreras to be a "dirty cop" with a record of official misconduct. Officer Utreras planted the gun and the drugs. Further, defendant alleged that he was never read his *Miranda* rights and he did not state "You got me" when he was arrested.

¶ 17    In her affidavit, Dakota averred the following. She was asleep in her basement apartment bedroom when the police officers forced entry. The officers ran from bedroom to bedroom, kicking in doors. They handcuffed her, her father, and two friends and took them into the living room. Afterwards, they kicked in the door to Kadesha's bedroom and also brought Kadesha and defendant into the living room. The officers began searching Kadesha's bedroom. About 10 minutes later she heard an officer shout, "it's outside in the gangway," and one officer went outside and returned with a gun and two plastic bags, one brown and one black. Soon after, both Kadesha and defendant were taken to jail. Finally, Dakota averred that there were never any drugs or a gun inside her house and that the police went outside and retrieved those items.

¶ 18    Also attached to the petition was a printout from a website, "Citizens Police Data Project," which was printed on January 14, 2016. The printout showed that, since Officer Utreras became a police officer in 1998, the Chicago Police Department allegedly received 34 complaints against him. The document only shows the general nature of the complaints, including, among others, terms such as "illegal search," "use of force," and "operation/personnel violations." Of the 34 complaints, 2 were "sustained," 13 were "not sustained," 8 were "unfounded," and 7 were classified as "other." As to the remaining four complaints, Officer Utreras was exonerated. The document does not show the disposition of each individual complaint.

¶ 19    Additionally, attached to the petition was a Chicago Police Department form titled "Summary Report Digest," dated April 28, 2005, which referred to "Complaint Register Investigation number 301006." The report describes two purported incidents in 2004, where Officer Utreras allegedly told a public defender, "I better not catch you in my neighborhood" and where Officer Utreras allegedly implied that he could plant drugs on the public defender during a traffic stop. The document shows that the first allegation was sustained, but not the second, and that the recommended action was a five-day suspension.

¶ 20    On June 20, 2018, the trial court summarily dismissed defendant's petition. The court found that, because Dakota's alleged testimony would have been cumulative of Kadesha's and

could have undermined Kadesha's credibility because their testimony could seem coordinated, trial counsel's failure to call Dakota as a witness was "not arguably unreasonable," nor would the testimony have "arguably made a difference." The court further found that counsel's performance was not arguably deficient or prejudicial for failing to investigate Officer Utreras's complaint record because the records might not have been admissible and would likely not have been impeaching due to their general nature and remoteness in time. Finally, the court found that the complaint record was not material and, therefore, defendant did not set forth the gist of an arguable *Brady* violation.

¶ 21    This appeal followed.

¶ 22                                    II. ANALYSIS

¶ 23    Defendant contends that the trial court erred in summarily dismissing his *pro se* postconviction petition where he made arguable claims that his trial counsel was ineffective and that the State committed a *Brady* violation.

¶ 24    The Act provides a method for a defendant to collaterally attack a conviction by asserting it resulted from a "substantial denial" of his constitutional rights. 725 ILCS 5/122-1 (West 2016); *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). A postconviction proceeding in a noncapital case has three stages. *Id.* at 10. At the first stage, a trial court may summarily dismiss a postconviction petition within 90 days of filing if it "determines the petition is frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2016). At the second stage, counsel can be retained or appointed, and defendant must show that his petition makes a substantial showing of a constitutional violation. *People v. Morales*, 2019 IL App (1st) 160225, ¶ 17. During this stage, the State can participate and either answer the petition or move to dismiss. *Id.* At the third stage, the court holds an evidentiary hearing and determines whether the defendant is entitled to relief. *Id.*

¶ 25    "Most postconviction petitions are drafted by *pro se* defendants, and accordingly, the threshold for a petition to survive the first stage of review is low." *People v. Allen*, 2015 IL 113135, ¶ 24; *Hodges*, 234 Ill. 2d at 9. At this first stage, the court must initially determine if the petition "alleges sufficient facts to state the gist of a constitutional claim." *Allen*, 2015 IL 113135, ¶ 24. The allegations must be taken as true, if not positively rebutted by the record, and liberally construed at the first stage. *Id.* ¶ 25; *People v. Domagala*, 2013 IL 113688, ¶ 35. A *pro se* petition is frivolous or patently without merit only when it "has no arguable basis either in law or in fact." *Hodges*, 234 Ill. 2d at 11-12. A petition lacks an arguable basis when it is based on an indisputably meritless legal theory, such as one that is contradicted by the record. *Id.* at 16. We review *de novo* the summary dismissal of a defendant's motion for leave to file a postconviction petition. *Allen*, 2015 IL 113135, ¶ 19.

¶ 26                    A. Ineffective Assistance of Trial Counsel

¶ 27    Defendant asserts that his trial counsel was ineffective for failing to call Dakota Joyce as a witness at trial and for failing to investigate Officer Utreras's complaint history. He asserts that, because only one witness testified for the State and one for his defense, the case came down to a credibility contest and that adding Dakota as a witness and impeaching Officer Utreras could have "tipped the balance of reasonable doubt in petitioner's favor."

¶ 28    The sixth and fourteenth amendments of the United States Constitution guarantee the fundamental right of every defendant in a criminal proceeding to be effectively assisted by counsel. *People v. Spann*, 332 Ill. App. 3d 425, 429 (2002) (citing U.S. Const., amends. VI, XIV). Ineffective assistance of counsel claims are assessed under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). In order to establish a claim of ineffective assistance of counsel, a defendant must first demonstrate that his counsel's performance was deficient in that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Secondly, a defendant must demonstrate that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* at 694. However, "[a]t the first stage of postconviction proceedings under the Act, a petition alleging ineffective assistance may not be summarily dismissed if (i) it is arguable that counsel's performance fell below an objective standard of reasonableness and (ii) it is arguable that the defendant was prejudiced." *Hodges*, 234 Ill. 2d at 17. Both prongs must be satisfied, and thus, courts are permitted to resolve ineffectiveness claims under the *Strickland* test by reaching only the prejudice prong, as lack of prejudice renders irrelevant the issue of counsel's performance. *People v. Coleman*, 183 Ill. 2d 366, 397-98 (1998).

¶ 29    We first address defendant's claim that trial counsel should have called Dakota as a trial witness. Defendant argues that Dakota would have corroborated Kadesha's trial testimony that the officers found the gun and drugs outside of the apartment, rather than on the window ledge, which would have impeached Officer Utreras's credibility, and she would have further testified that there were no guns or drugs in the apartment. The State contends that defendant's argument must fail because Dakota did not aver that she was willing to testify on defendant's behalf and Dakota's testimony would have been "redundant and less descriptive than Kadesha's."

¶ 30    In addition to the factual pleading requirements for a petition, the Act also mandates that the petition "have attached thereto affidavits, records, or other evidence supporting its allegations." 725 ILCS 5/122-2 (West 2016). The accompanying documentation must "identify with reasonable certainty the sources, character, and availability of the alleged evidence supporting the petition's allegations." *People v. Delton*, 227 Ill. 2d 247, 254 (2008). We reject the State's argument that Dakota's failure to aver that she would testify at trial to the statements contained in the affidavit rendered defendant's claim meritless because the documentation did not identify the "availability" of the evidence. In *Allen*, 2015 IL 113135, our supreme court addressed the effect of a witness statement attached to a postconviction petition. There, the statement at issue, *inter alia*, did not indicate that the witness would testify to the facts contained therein. *Id.* ¶ 41. Nonetheless, our supreme court held that this was not fatal to the affidavit, as an inference could be made that the witness was both willing to provide the statement and willing to testify and such an inference would be consistent with the requirement that postconviction petitions should be construed liberally at the first stage. *Id.* We, too, find that it would be appropriate at this stage to infer that Dakota would be willing to testify regarding the statements contained in her affidavit. We now address whether defendant's allegations, taken as true, set forth an arguable claim.

¶ 31    In this case, the State produced one witness, Officer Utreras, to testify as to what occurred during the execution of the warrant, and the defense called one witness, Kadesha, to contradict that testimony. Officer Utreras testified that, when he entered the locked bedroom, he observed defendant placing a gun and two bags of drugs, later confirmed to contain about 1 gram of

cocaine and 15 grams of heroin, on the window ledge. Officer Utreras also recovered bags containing about one gram of heroin from inside a small refrigerator in the bedroom. Kadesha testified that she and defendant were lying on the bed when the officers entered the bedroom and that she heard an officer say "it's in the gangway" when the drugs and gun were recovered.

¶ 32    After reviewing the record, we find that defendant has stated an arguable claim that trial counsel was ineffective for failing to call Dakota as a witness at trial. As to the first prong, we find that counsel's performance was arguably deficient because according to her affidavit, which we must take as true, Dakota would have provided exculpatory testimony. Though generally true that counsel's decision regarding which witnesses to call at trial is a matter of trial strategy immune from ineffective assistance claims (*People v. West*, 187 Ill. 2d 418, 432 (1999)), trial counsel may be considered ineffective for failing to present exculpatory evidence of which he or she is aware (*People v. Upshaw*, 2017 IL App (1st) 151405, ¶ 39). We acknowledge that counsel may have had strategic reasons for failing to call Dakota at trial; however, we do not consider arguments related to trial strategy when reviewing first-stage postconviction petitions. See *People v. Tate*, 2012 IL 112214, ¶ 22. Dakota's testimony would have supported the defense theory that the drugs and gun were found outside, thereby contradicting Officer Utreras's testimony that he observed defendant holding the gun and drugs. On this record, we fail to see how failing to call a potentially exculpatory witness is anything other than deficient performance of counsel.

¶ 33    With regards to the prejudice prong, we find that the failure to call Dakota also arguably prejudiced defendant. The evidence presented at trial was far from overwhelming as to defendant's guilt. Both parties presented just one witness, each of whom testified to contradicting versions of the events that took place at the apartment. At the first stage, "the court may not engage in an assessment of the relative weight of the evidence supporting the defendant's conviction and the evidence which exonerates the defendant." *People v. White*, 2014 IL App (1st) 130007, ¶ 29; see also *People v. Robinson*, 2020 IL 123849, ¶ 83 ("Without engaging in any credibility determinations, there is no way for this court—or any court—to assess the reliability of those affidavits or the veracity of their assertions.").

¶ 34    We are also not persuaded by the State's argument that defendant was not arguably prejudiced because Dakota's testimony would have been redundant. Evidence is considered cumulative when it adds nothing to what was already before the jury. *People v. Molstad*, 101 Ill. 2d 128, 135 (1984). However, evidence that goes to the ultimate issue in the case will not be considered cumulative. *Id.* The ultimate issue in this case is whether defendant possessed the drugs and gun to support his convictions. The averments contained in Dakota's affidavit, which we must consider as true at this stage (see *People v. Lewis*, 2017 IL App (1st) 150070, ¶ 14), support the defense theory that the gun and the drugs were not found inside the apartment but were actually found outside in the gangway. First, such testimony would contradict Officer Utreras's testimony and subsequently impact his credibility. See *People v. Adam*, 2013 IL App (1st) 111081, ¶ 36 (finding that, where the statement of a witness is both exonerating and contradicts a State witness, it can be capable of producing a different outcome at trial). Second, the testimony would call into question whether defendant was actually in possession of those items. We note that no fingerprints were found on the gun, which, according to Utreras's testimony, he observed defendant place, along with the drugs, on the window ledge. Whether defendant was in actual possession of those items would be less certain with Dakota's

testimony. Thus, we find that defendant was arguably prejudiced by counsel's failure to call Dakota as a witness at trial.

¶ 35 In sum, we conclude that defendant's *pro se* initial postconviction petition, liberally construed, states at least an arguable claim that trial counsel's performance fell below an objective standard of reasonableness based on his failure to call a witness to testify at trial and it is further arguable that such failure prejudiced defendant. Thus, we hold that defendant has stated the gist of a constitutional claim.

¶ 36 Having determined that defendant has satisfied *Strickland*'s ineffective assistance test, we must nonetheless determine whether, as additionally required under the Act, the averments in Dakota's affidavit are positively rebutted by the record. We find that they are not. The fact that both drugs and a gun were recovered does not result in Dakota's affidavit being "positively rebutted by the record" where defendant's theory of innocence is that such evidence was planted by the officers or, at least, was not in his possession to justify his convictions. The photograph of the drugs and gun on the window ledge similarly do not defeat defendant's claim. "[T]he existence of a conflict with the trial evidence is not the same as finding that the new evidence is positively rebutted." *Robinson*, 2020 IL 123849, ¶ 60. To be positively rebutted, it must be "clear from the trial record that no fact finder could ever accept the truth of that evidence, such as where it is affirmatively and incontestably demonstrated to be false or impossible." *Id.* Though fingerprint evidence on the gun could have bolstered Officer Utreras's version of events, none was presented here, and thus we cannot say that the trial record renders the allegations in Dakota's affidavit to be irrefutably impossible. Rather, Dakota's potential testimony could corroborate and bolster Kadesha's testimony, arguably giving defendant's theory that the physical evidence was planted more weight at trial.

¶ 37 Because we have found defendant's postconviction petition states an arguable claim of ineffective assistance of trial counsel based on the failure to call Dakota as a witness at trial, it is unnecessary for this court to review the merits of the other claims raised in defendant's postconviction petition. See *People v. Rivera*, 198 Ill. 2d 364, 374 (2001) (partial summary dismissals are not permitted under the Act). Thus, we reverse and remand the entire petition for second-stage proceedings. We express no opinion as to whether defendant's allegations will support a substantial showing of a constitutional violation, as is required at the second stage.

¶ 38                                    III. CONCLUSION

¶ 39 For the reasons stated, we reverse the judgment of the circuit court and remand for second-stage proceedings.

¶ 40 Reversed and remanded.