2024 IL App (1st) 230724-U

FOURTH DIVISION
Order filed: August 22, 2024

No. 1-23-0724

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 05 CR 5895 |
| | ) | |
| JAMELL A. MURPHY, | ) | Honorable |
| | ) | Stanley J. Sacks, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE HOFFMAN delivered the judgment of the court.
Justices Martin and Ocasio concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Order denying leave to file a two-claim successive petition for postconviction relief is reversed in part because the witness affidavit supporting the defendant's actual innocence claim identified someone other than the defendant as the perpetrator and the witness could not have been discovered through the exercise of due diligence because the defendant denied being at the scene and would not have been aware of the witness. The order is otherwise affirmed in part because the defendant abandoned his proportionate penalties claim on appeal.

¶ 2    The defendant, Jamell Murphy, appeals a circuit court order denying his motion for leave

to file a successive petition for postconviction relief under the Post-Conviction Hearing Act (Act)

(725 ILCS 5/122-1 *et seq*. (West 2022)) raising a claim of actual innocence and a claim that his sentence violates the proportionate penalties clause of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, § 11). Because his motion presented a colorable claim of actual innocence, we reverse the portion of the circuit court's order denying leave to file that claim. We affirm the denial of leave to file the proportionate penalties claim because the defendant has abandoned that claim on appeal.

¶ 3     The facts and procedural history of the defendant's case have been adequately set out in the orders disposing of the defendant's prior appeals. See *People v. Murphy*, 401 Ill. App. 3d 1142 (2010) (*Murphy I*) (affirming convictions on direct appeal); *People v. Murphy*, 2012 IL App (1st) 110738-U (*Murphy II*) (affirming dismissal of initial postconviction petition); *People v. Murphy*, 2016 IL App (1st) 140572-U (*Murphy III*) (affirming denial of motion for leave to file successive petition for postconviction relief); *People v. Murphy*, No. 1-16-0234 (2018) (*Murphy IV*) (affirming dismissal of petition for relief from judgment); *People v. Murphy*, 2020 IL App (1st) 180256-U (*Murphy V*) (affirming denial of motion for leave to file successive petition for postconviction relief); *People v. Murphy*, 2023 IL App (1st) 221553-U (*Murphy VI*) (affirming denial of motion for leave to file successive petition for postconviction relief). Accordingly, we will only present those facts necessary to the disposition of the present appeal.

¶ 4     Following a trial in 2008, the defendant was convicted of first-degree murder and armed robbery for the robbery and shooting of Darryl Floyd, who later died from an internal infection caused by a gunshot wound in his left thigh. The defendant was ultimately sentenced to fifty years' imprisonment for murder and eight years for armed robbery. The State's case against the defendant relied exclusively on inculpatory statements that the defendant made to police, including a

videotaped confession. In the statements, the defendant admitted to participating in the robbery of Floyd at the home of his codefendant, Melvin Williams, who is also his uncle. At Williams' behest, the defendant and another man robbed Floyd while Kathy Perry was keeping Floyd occupied with the promise of "sexual favors." The defendant admitted to police that he shot Floyd in the buttocks or leg during the robbery before Floyd fled out the window. In his trial testimony, the defendant admitted to having been involved in a different robbery of a man and a woman outside of Williams' home on the day in question, but he denied being involved in the robbery and shooting of Floyd. Instead, he asserted that his confession had been coerced through intimidation and threats and that he was under the influence of drugs when he was being interrogated. There was no other evidence linking the defendant to the crime, and during her testimony Perry did not identify the defendant as one of the men who robbed Floyd.

¶ 5      After his convictions were affirmed on appeal and his initial postconviction petition was dismissed, the defendant sought leave to file a successive postconviction petition supported by an affidavit from Williams averring that he "was not involved" in the shooting of Floyd and that "he was not present at the house at the time of the shooting." *Murphy III*, 2016 IL App (1st) 140572-U, ¶ 19 (unpublished order under Supreme Court Rule 23). After the circuit court denied leave to file, we affirmed, holding that Williams' "spartan" affidavit simply stating that the defendant was not involved did not undermine confidence in the verdict. *Id.* ¶¶ 25–26.

¶ 6      In January 2023, the defendant filed another motion for leave to file a successive petition for postconviction relief, which is the subject of the present appeal. In the motion, the defendant claimed that his sentence violates the proportionate penalties clause of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, § 11) and that he is actually innocent. In support of his actual

innocence claim, the defendant again filed the same affidavit from Williams that he filed previously, which he claimed both the circuit court and this court wrongly discounted, and he also presented an affidavit from Robert Stanford, an alleged witness to the robbery and shooting of Floyd.

¶ 7    In his affidavit, Stanford averred that, on the night of the shooting, he was at Williams' house "for a brief moment selling weed to people there." While he was talking to people in the living room, "two young teenage boys[,] both short [and] light skinned[,] began to argue with an older dark guy." The boys pulled out guns, forced the man into a bedroom, and closed the door. Stanford then "heard shouts to check [the man's] pants[,] then one loud pop and glass breaking." Fearful of being shot, Stanford fled from the house and did not return. "Sometime later" a detective reached out to Stanford and showed him a photo of the defendant. Stanford told the detective that he was "100% sure that's not one of the shooters." According to Stanford, he "explained that these two boys were short[,] light skinned guys and [the defendant is] much darker than them and overall bigger." The detective told Stanford that he would be in touch, but Stanford never heard from him again. Stanford further stated that "around 2015-16 summer" he saw on the news that the same detective had been fired for misconduct, and he learned that the detective's name was "McDermott." Stanford then "looked the name Jamell Murphy up and found out he was in prison for the shooting," so he "reached out to [the defendant] explaining that [he] saw who had actually shot the guy and this affidavit is the result of that conversation."

¶ 8    The defendant alleged in his motion that he was "unaware of the evidence presented [in Stanford's affidavit] or whether the witness Mr. Stanford would be willing to come forward and

help him." He further asserted that that Stanford's information was "purposely suppressed" by the detectives investigating the shooting.

¶ 9    The circuit court denied the defendant's motion for leave to file. First, it found that the defendant's proportionate penalties claim was barred by *res judicata* because he had unsuccessfully raised the exact same issue before. See *Murphy V*, 2020 IL App (1st) 180256-U (unpublished order under Supreme Court Rule 23). As for the defendant's actual innocence claim, the court first found that the defendant's request for relief based on Williams' affidavit was likewise barred by *res judicata* because he had presented the same affidavit in a previous motion for leave to file a successive petition, and the denial of that motion was affirmed on appeal. See *Murphy III*, 2016 IL App (1st) 140572-U (unpublished order under Supreme Court Rule 23). Regarding Stanford's affidavit, the court found that the affidavit does not qualify as newly discovered because the defendant could have discovered Stanford through Williams, whom the court reasoned "would clearly have been able to provide [the defendant] information as to who was present at his house, how Stanford was there to sell drugs to the house's occupants, and that Stanford might be a witness worth investigating." The court further concluded that Stanford's affidavit is no different from Williams' affidavit because "Stanford provides the same ultimate allegations some unidentified individuals were the shooters and Petitioner was not present on scene." Additionally, the court found that "[t]here is no basis to conclude the probability of a different outcome at retrial is raised by [the defendant's] presentation of these two spartan affidavits in contrast to the evidence of guilt shown in the record—which includes [the defendant's] confession, the circumstantial evidence, and the various eye witness accounts implicating [the defendant] in this shooting." This appeal follows.

¶ 10    We agree with the defendant that the circuit court erred in finding that Stanford's affidavit is neither newly discovered nor conclusive evidence of the defendant's innocence, and we further conclude that the affidavit is both material and noncumulative. Accordingly, the defendant should have been granted leave to file his claim alleging actual innocence. As for the defendant's proportionate penalties claim, the defendant has abandoned that claim on appeal. Therefore, despite our reversal as to the actual innocence claim, we affirm the denial of leave to file the proportionate penalties claim. See *People v. Griffin*, 2024 IL 128587, ¶ 67 (holding that reversing and remanding for second-stage proceedings on the defendant's actual innocence claim did not obviate the need to evaluate the defendant's ineffective-assistance-of-counsel claim because the fundamental fairness exception and cause-and-prejudice test both apply to individual claims, not petitions, and "[a]ny claim in a successive petition should not be advanced without a determination that the claim has met the appropriate standard").

¶ 11    The Act contemplates only one postconviction proceeding. *People v. Robinson*, 2020 IL 123849, ¶ 42. However, a defendant may file a successive petition if he "can establish cause and prejudice for the failure to assert a postconviction claim in an earlier proceeding" or if he "asserts a fundamental miscarriage of justice based on actual innocence." *Id.* "Prior to commencing a successive postconviction petition, a petitioner must obtain leave of court." *Id.* ¶ 43. "A request to file a successive petition based on actual innocence is reviewed under a higher standard than that applicable to the first stage for an initial petition, which only requires that the petition is not frivolous or patently without merit." *Id.* "[L]eave of court should be denied only where it is clear, from a review of the successive petition and the documentation provided by the petitioner that, as a matter of law, the petitioner cannot set forth a colorable claim of actual innocence." *People v.*

*Edwards*, 2012 IL 111711, ¶ 24. "Stated differently, leave of court should be granted when the petitioner's supporting documentation raises the probability that 'it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.' " *Id.* (quoting *Schlup v. Delo,* 513 U.S. 298, 327 (1995)). "At the pleading stage of postconviction proceedings, all well-pleaded allegations in the petition and supporting affidavits that are not positively rebutted by the trial record are to be taken as true." *Robinson*, 2020 IL 123849, ¶ 45.

¶ 12    "Substantively, in order to succeed on a claim of actual innocence, the defendant must present new, material, noncumulative evidence that is so conclusive it would probably change the result on retrial." *People v. Coleman*, 2013 IL 113307, ¶ 96 (citing *People v. Washington,* 171 Ill. 2d 475, 489 (1996)). "New means the evidence was discovered after trial and could not have been discovered earlier through the exercise of due diligence." *Id.* "Material means the evidence is relevant and probative of the petitioner's innocence." *Id.* (citing *People v. Smith,* 177 Ill. 2d 53, 82–83 (1997)). "Noncumulative means the evidence adds to what the jury heard." *Id.* (citing *People v. Molstad,* 101 Ill. 2d 128, 135 (1984)). "And conclusive means the evidence, when considered along with the trial evidence, would probably lead to a different result." *Id.* (citing *People v. Ortiz,* 235 Ill. 2d 319, 329 (2009)). We review the denial of leave to file an actual-innocence claim *de novo*. *Robinson*, 2020 IL 123849, ¶ 40.

¶ 13    First, we disagree with the circuit court that Stanford could have been discovered prior to the defendant's trial with the exercise of due diligence. As a starting point, the defendant has alleged that he was unaware that Stanford was a witness to the robbery, and at the leave-to-file stage we must accept that allegation as true unless it is positively rebutted by the record. See *id.* ¶ 45. Further, rather than rebutting that assertion, the record instead provides some support for the

defendant's claim that he did not know to seek out Stanford as a witness. Indeed, the defendant testified at trial and has maintained since that he was not at Williams' house at the time that Floyd was robbed and shot. Accordingly, again taking that assertion as true, he would not have known that Stanford was at the house and would not have known to locate and speak to Stanford when investigating witnesses. See *People v. Adams*, 2013 IL App (1st) 111081, ¶ 33 (observing that, because he denied being at the scene of the crime, the defendant would not have had any reason to seek out two witnesses who happened to be passing by when the crime occurred).

¶ 14    Additionally, the circuit court was incorrect in concluding that Williams "would clearly have been able to provide [the defendant] information as to who was present at his house, how Stanford was there to sell drugs to the house's occupants, and that Stanford might be a witness worth investigating." The court based this reasoning on the fact that Williams had already been tried and convicted seven months prior to the defendant's trial. The court, therefore, found that Williams' fifth amendment rights would not have prevented him from telling the defendant who was at the house at the time of the shooting. However, Williams having been convicted and sentenced was not the end of his defense and did not necessarily make him an available witness. Indeed, in *People v. Ruhl*, 2021 IL App (2d) 200402, ¶ 88, this court rejected the argument that a codefendant becomes an available witness at the conclusion of their trial and sentencing proceedings. To the contrary, a codefendant may still continue his defense on direct appeal and in collateral proceedings and, therefore, may not wish to assist a codefendant's case in a way that might implicate himself. *Id.* In this case, Williams' direct appeal did not conclude until August 2009, more than a year after the defendant's trial. Accordingly, he was not yet an available witness

and we cannot assume that the defendant could have learned of Stanford's presence at the scene of the crime through Williams prior to the defendant's trial.

¶ 15    For both of these reasons, the defendant sufficiently alleged that he could not have discovered Stanford's information prior to trial with the exercise of due diligence, and he has, therefore, presented a colorable claim that Stanford's affidavit qualifies as newly discovered evidence.

¶ 16    The circuit court's second basis for denying the defendant's motion for leave to file was that Stanford's affidavit is not conclusive evidence of the defendant's innocence. In reaching that conclusion, the court reasoned that Stanford's allegations that the defendant did not shoot Floyd and was not present at the house at the time of the shooting are no different than the allegations in Williams' affidavit, which the circuit court and this court had both previously found insufficient to establish the conclusiveness element of an actual innocence claim. However, we do not see such similarity between the affidavits of Williams and Stanford, and Stanford's affidavit does contain conclusive evidence of the defendant's innocence.

¶ 17    As we characterized it in *Murphy III*, Williams' affidavit was "spartan." Indeed, Williams merely alleged that "on June 22, 2004, [the defendant] was not [i]nvolved in a shooting that took place at 7147 South Campbell, he was not present at the house at the time of the shooting." (Alteration in original.) *Murphy III*, 2016 IL App (1st) 140572-U, ¶ 19 (unpublished order under Supreme Court Rule 23). In finding Williams' affidavit inconclusive, we observed that it was similar to another bare bones affidavit in *People v. House,* 2015 IL App (1st) 110580, ¶ 41, in that it contained no explanation as to why Williams was now making the statement and it stated simply and without elaboration that the defendant was not involved in the shooting. *Murphy III*, 2016 IL

App (1st) 140572-U, ¶ 19. However, Stanford's affidavit does not suffer from these same deficiencies.

¶ 18    Unlike Williams, Stanford explains why he is now coming forward. He states that he had previously spoken to a detective, who then never got back in touch, and that when he saw that the detective had been fired for misconduct, he researched the case and discovered that the defendant had been convicted of shooting Floyd. He then reached out to the defendant to offer his assistance. Additionally, Stanford's affidavit contains much more detailed information regarding the events at Williams' house, including why he was there, what he saw, and what he did. Notably, he also includes important details that the apparent robbers were young, light-skinned, and smaller than the defendant, who has darker skin. Thus, we cannot agree that Stanford's affidavit should be dismissed in the same manner as Williams'.

¶ 19    Additionally, Stanford's allegations that the apparent robbers had lighter skin and were smaller than the defendant and that he was "100% sure" that the defendant was not one of the shooters satisfy the conclusiveness requirement because they identify someone other than the defendant as the true perpetrator. Indeed, when an affidavit "provides evidence that a different party is guilty, *** [it] is of such a conclusive character as to lead to a different result on retrial." *Robinson*, 2020 IL 123849, ¶ 76; see also *People v. White*, 2014 IL App (1st) 130007, ¶¶ 26–29 (finding that a new affidavit identifying someone else as the murderer was sufficient to establish conclusiveness at the pleading stage even when the affidavit conflicted with trial evidence of multiple witnesses identifying the defendant, and noting that an opposite conclusion would require the court to weigh evidence and make credibility determinations, tasks that are reserved for the third stage); *People v. Harper*, 2013 IL App (1st) 102181, ¶ 49 ("[W]here newly discovered

evidence is both exonerating and contradicts the State's evidence at trial, it is capable of producing a different outcome at trial."). Further, unless the allegations are positively rebutted by the record (see, *e.g.*, *People v. Sanders*, 2016 IL 118123, ¶ 48 (concluding that a codefendant's recantation was positively rebutted by the trial record when the recanting codefendant claimed that the victim had only been shot once, but the medical examiner had testified at trial that the victim had in fact been shot twice)), which they are not in this case, we must accept them as true, and they cannot be discounted merely because they may conflict with other witness testimony. That weighing of the evidence is a task reserved for the third stage of a postconviction proceeding. *Robinson*, 2020 IL 123849, ¶ 61. Accordingly, we conclude that the defendant's allegations and Stanford's affidavit satisfy the conclusiveness requirement.

¶ 20     Having determined that the defendant has sufficiently alleged that Stanford's affidavit is newly discovered and conclusive, we lastly find that the defendant's allegations were also sufficient to show that the affidavit is material and noncumulative. Just as the affidavit is conclusive because it identifies someone other than the defendant as the perpetrator, Stanford's affidavit is likewise material because it is, for that same reason, "relevant and probative of the petitioner's innocence." *Coleman*, 2013 IL 113307, ¶ 96 (citing *Smith,* 177 Ill. 2d at 82–83).

¶ 21     As for whether the affidavit was noncumulative, the State contends that Stanford's affidavit merely repeated the defendant's own testimony that he was not involved in the shooting and Perry's testimony that she did not see the defendant at Williams' house. However, the mere fact that Stanford's affidavit corroborates the defendant's testimony does not make it cumulative. See *People v. Warren*, 2016 IL App (1st) 090884-C, ¶ 81 ("Corroborative evidence is not the same as cumulative evidence."); *Molstad,* 101 Ill. 2d at 135 (holding that evidence corroborating

defendant's alibi was not cumulative); *People v. Sparks,* 393 Ill. App. 3d 878, 886 (2009) (holding that eyewitness testimony corroborating defendant's version of events was not cumulative). Further, the defendant's and Perry's testimony did not contain Stanford's additional allegations that the true perpetrators were smaller than the defendant and lighter skinned and that he was 100% certain that the defendant did not rob Floyd. Those details were not presented to the jury at the defendant's trial, making Stanford's affidavit noncumulative. See *id.* ("Noncumulative means the evidence adds to what the jury heard." (citing *Molstad,* 101 Ill. 2d at 135)).

¶ 22    In sum, the defendant's motion for leave to file a successive petition for postconviction relief adequately alleged a colorable claim of actual innocence. Accordingly, we reverse the portion of the circuit court's order denying the defendant leave to file his actual innocence claim, and we remand for that claim to be advanced to the second stage. However, because he has abandoned his proportionate penalties claim on appeal, we affirm the court's denial of leave to file as to that claim.

¶ 23    Affirmed in part, reversed in part, and remanded with instructions.