2023 IL App (1st) 221553-U

FOURTH DIVISION
Order filed: November 2, 2023

No. 1-22-1553

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Respondent-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 05 CR 5895 |
| | ) | |
| JAMELL MURPHY, | ) | Honorable |
| | ) | Stanley J. Sacks, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HOFFMAN delivered the judgment of the court.
Presiding Justice Rochford and Justice Martin concurred in the judgment.

**ORDER**

¶ 1    *Held*:    We affirmed the trial court's order denying leave to file a successive postconviction petition under the Post Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2020)), finding that the claim asserted is barred by the doctrine of *res judicata* and that the petitioner is unable to make a *prima facia* showing that he suffered prejudice by failing to raise his claim in his initial postconviction petition.

¶ 2     The petitioner, Jamell Murphy (hereinafter the Defendant), appeals from an order of the circuit court denying him leave to file a successive postconviction petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)). He argues that the circuit court erred in denying him leave to file the successive petition where he made a *prima facie* showing for cause in not challenging the constitutionality of his arrest pursuant to an investigative alert and a *prima facie* showing of prejudice because his illegal arrest led to the police obtaining his confession, which was the only evidence connecting him to the offenses for which he was convicted. For the reasons which follow, we affirm the order of the circuit court denying the defendant leave to file a successive postconviction petition under the Act.

¶ 3     The defendant was arrested and charged with the first-degree murder and armed robbery of Darryl Floyd. Also arrested and charged were co-defendants Noah Wilson and Melvin Williams. Prior to trial, the defendant filed a motion to quash his warrantless arrest, arguing a lack of probable cause to support the arrest. At the hearing on that motion, Chicago police Detective Brian Forberg testified that he was assigned to investigate the shooting and subsequent death of Floyd. Detective Forberg testified that he interviewed Williams on August 23 and 24, 2004, and Williams admitted his involvement in the robbery and shooting of Floyd and implicated the defendant. According to Detective Forberg, Williams told him that he and Gregory Moss planned to rob Floyd and that he then called his nephew, Jaquis, and told him that Floyd was at an address on South Campbell Street and that he had a lot of money. Williams stated that he later called the defendant, also one of his nephews, who arrived at the Campbell Street address along with two other individuals, including Wilson. Both the defendant and Wilson had guns. Detective Forberg testified that Williams told him that he, the defendant, Wilson, and another individual went upstairs at the Campbell Street

address and discussed robbing Floyd. Williams stated that he left the defendant and Wilson and went to the basement of the building, shortly after which he heard two gunshots. According to Williams, he went back upstairs and saw the defendant standing outside a bedroom. Williams stated that the defendant said: "Unc, don't worry, I just shot him in the ass." Detective Forberg testified that Williams identified the defendant in a photo array. According to Detective Forberg he also interviewed Moss on that same day and Moss also implicated the defendant in the shooting of Floyd. Detective Forberg testified that he caused the issuance of an investigative alert for the arrest of the defendant for murder.

¶ 4    The parties stipulated that the defendant was arrested on January 28, 2005, at 5137 South Drexel, Unit K,  "[t]hat here was no arrest warrant for him, no search warrant for him, no consent to search form signed and that as a result of his arrest, the State now has information they plan to use to prosecute him in this case. The identification and the statement." The trial court denied the defendant's motion to quash his arrest.

¶ 5    The defendant also filed a separate motion to suppress the inculpatory statement that he gave after his arrest, arguing that his confession came as the result of psychological coercion after he had requested an attorney, and before he was read his *Miranda* rights. Officer Timothy O'Brien, Detective Timothy McDermott, Officer Thomas Tinsman, Detective Joseph Struck, and Assistant State's Attorney Stuart Sergeant denied the defendant's allegations.

¶ 6    Officer Schmitz testified that, on January 28, 2005, he was advised that an investigative alert with probable cause had been issued for the arrest of the defendant for murder and that he could be found at a townhouse at 5037 S. Drexel, Unit K. Officer Schmitz stated that he and Officer Tinsman went to the Drexel address. When they arrived, Antoinette Sullivan answered the door. According to Officer Schmitz, they informed Sullivan that they were looking for the defendant to

place him under arrest and that the detectives wanted to talk to him. He testified that Sullivan stated that the individual whom they had just seen run up the stairs was the defendant. Officer Schmitz stated that they asked Sullivan if they could come in and take the defendant in custody, to which she said "yes." After entering, the officers placed the defendant under arrest and transported him to the second district police station.

¶ 7 The trial court denied the defendant's motion to suppress his inculpatory statement. The trial court found that the defendant gave a "free and voluntary, knowing and intelligent waiver," after having been advised of his rights. Having viewed the defendant's videotaped interview, the trial court found that there was no indication that the defendant was under the influence of narcotics, had been forced or threatened in any fashion, or psychologically coerced to give the statement.

¶ 8 The defendant and Williams were tried simultaneously by separate juries. The jury found the defendant guilty of first-degree murder by personally discharging a firearm that proximately caused the death of Floyd and guilty of armed robbery. The trial court sentenced the defendant to consecutive prison terms of 25 years for first-degree murder, 25 years for personally discharging a firearm causing Floyd's death, and 8 years for armed robbery.

¶ 9 On direct appeal, the defendant argued that he was not proven guilty beyond a reasonable doubt and that his separate conviction for armed robbery should be vacated because the jury returned its verdict on a general verdict form. This court rejected both arguments and affirmed the defendant's convictions. See *People v. Murphy*, No. 1-08-1705 (2010) (unpublished order under Illinois Supreme Court Rule 23).

¶ 10 On January 3, 2011, the defendant filed a postconviction petition seeking relief under the Act. The defendant argued that the imposition of the 25-year sentence enhancement based on the

use of a firearm violated the decision in *Appendi v. New Jersey*, 530 U.S. 466 (2000), because the jury returned its verdict on a general verdict form, and that the trial court erred in instructing the jury on accountability. The trial court summarily dismissed the petition, and the defendant appealed. The defendant's appointed counsel filed a motion to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987), asserting that no issues of merit existed to warrant argument on appeal. This court granted the motion to withdraw as counsel and affirmed the dismissal of the defendant's postconviction petition. See *People v. Murphy*, 2012 IL App (1st) 110738-U.

¶ 11    On September 27, 2013, the defendant filed a motion for leave to file a successive postconviction petition pursuant to the Act. In that petition, he asserted that: he had newly discovered evidence of his actual innocence; his trial counsel rendered ineffective assistance; and the State knowingly used false evidence at his trial. The trial court denied the defendant leave to file his successive postconviction petition, and the defendant appealed. This court affirmed the trial court's order denying leave to file the successive petition. See *People v. Murphy*, 2016 IL App (1st) 140572-U.

¶ 12    On June 1, 2015, the defendant filed a petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2014)), alleging that the imposition of the 25-year sentence enhancement was "void" because the State failed to inform him that it would seek a sentence enhancement in violation of 725 ILCS 5/111-3(c-5) and because the general verdict form returned by the jury did not contain a separate finding that he personally discharged a firearm proximately causing Floyd's death. The State moved to dismiss the petition which the trial court granted. The defendant appealed. The defendant's appointed counsel filed a motion to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987), asserting that no issues of merit existed to warrant argument on appeal. This court issued a summary order, granting

the motion to withdraw as counsel and affirming the dismissal of the defendant's petition. See *People v. Murphy*, No. 1-16-0234 (2018) (unpublished order under Illinois Supreme Court Rule 23).

¶ 13    On October 31, 2017, the defendant filed a second motion for leave to file a successive postconviction petition. In the petition, the defendant asserted that: his trial counsel rendered ineffective assistance for failing to investigate Floyd's medical records and reports; his 58-year sentence was an unconstitutional *de facto* life sentence under the holding in *Miller v. Alabama*, 560 U.S. 467 (2012); he received ineffective assistance of trial counsel when counsel "failed to challenge whether the State met its burden of proof at suppression hearing where petitioner['s] arrest and all evidence against him came as a result of an illegal arrest in his home on an investigative alert (not a warrant);" and "the trial court erred in denying the motion to suppress where the State never established that the information relied upon was based on facts sufficient to establish probable cause to make an arrest U.S.C.A. Const. Amend." The petition also alleged that "an investigative alert is not a warrant to arrest nor did it give Chicago police probable cause to enter the petitioner's home without consent to search and arrest him [at] 1:00 a.m."  The trial court denied the defendant's motion to file the successive postconviction petition, and the defendant appealed. On appeal, the defendant argued that he established both cause and prejudice for not having raised his sentencing claim sooner as it was based on a new rule of law announced in *Miller* and that his 58-year sentence violated both the eighth amendment to the United States Constitution (U.S. Const., amend VIII) and the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art I, § 11). The defendant raised no other arguments addressed to the propriety of the trial court's order denying him leave to file a successive postconviction petition. See *People v.*

*Murphy*, 2020 IL App (1st) 180256-U. On February 28, 2020, this court affirmed the trial court's order denying the defendant's motion for leave to file the successive petition. *Id.* ¶¶ 24–25.

¶ 14    On February 5, 2020, the defendant filed a third motion for leave to file a successive postconviction petition seeking relief under the Act, which is the basis of this appeal. In the petition, the defendant asserted that his appellate counsel on direct appeal was ineffective for "failing to challenge and raise [the] issue of [his] arrest by [the Chicago Police Department] based solely off an investigative alert issued by a CPD Supervisor and not off sworn facts to a judge who issued a warrant." He based the argument on the decision in *People v. Bass*, 2019 IL App (1st) 160640. He also asserted that, since he was arrested after a warrantless entry into his home, without probable cause, and based solely on an investigative alert, "he was not afforded equal protection under the Illinois and U.S. Constitutions where he was tried and convicted using his post-arrest statement which was illegally obtained in direct violation of his constitutional rights and was the fruit of the poisonous tree." The petition also asserted violations of the 5th and 14th amendments to the United States Constitution (U.S. Const., amends. V, XIV) based upon a newly discovered photograph and civil complaints against Detectives Struck, McDermott, and O'Brien which "supports his prior claim that his confession came as a result of mental/physical coercion ***."

¶ 15    On September 2, 2022, the trial court denied the defendant's motion for leave to file his successive postconviction petition. The trial court found that the defendant's claim addressed to the constitutionality of arrests based on an investigative alert is barred by the doctrine of *res judicata.* Procedural bar aside, the trial court found that the defendant's claim based on the decision in *Bass* lacked merit as the holding in that case had been vacated by the supreme court in *People v. Bass*, 2021 IL 125434, ¶ 31. The trial court found that the defendant could not establish prejudice on his *Bass*-based claim and could not establish either cause or prejudice for his claim of newly

discovered evidence supporting his claim that his post-arrest statement was coerced. The trial court also found that the defendant's appellate counsel on direct appeal could not be found to be ineffective for not raising a challenge to the defendant's arrest based upon the reasoning in *Bass*, a decision that was not filed until approximately 8 years after the defendant's direct appeal was concluded. This appeal followed.

¶ 16    In urging reversal of the trial court's order denying him leave to file his successive petition, the defendant argues that he made a *prima facie* showing of cause for not challenging the constitutionality of his arrest pursuant to an investigative alert earlier as the reasoning in *Bass* and its progeny, *People v. Smith*, 2022 IL App (1st) 125434, was not available at the time of his earlier postconviction proceedings, and that he made a *prima facie* showing of prejudice because his illegal arrest led to the police obtaining his confession, which was the only evidence connecting him to the offenses for which he was convicted. The defendant raised no issue in this appeal as to the propriety of the trial court's order relating to his claim that a newly discovered photograph and the civil complaints against Detectives Struck, McDermott, and O'Brien support his prior claim that his confession came as a result of mental/physical coercion.

¶ 17    The State argues that the defendant's *Bass*-based claim that his arrest pursuant to an investigative alert is unconstitutional is barred by the doctrine of *res judicata* where he raised the same issue in his October 31, 2017, motion for leave to file a successive postconviction. The State also argues that the defendant cannot establish cause for having failed to raise his claim that arrests based on an investigative alert are unconstitutional in earlier proceedings. The State contends that concerns over the practice had been raised in *People v. Starks*, 2014 IL App (1st) 121169, ¶ 77, and *People v. Highland*, 2012 IL App (1st) 110966, ¶ 51 (Salone, J., specially concurring, joined by Neville, J). The State argues that, although the defendant's argument had less support in the

law prior to the decision in *Bass*, at the time that he filed his direct appeal the argument was available to him. The State contends that, at most, the decisions in *Bass* and *Smith* would have offered the defendant potentially helpful support for a constitutional argument regarding investigative alerts which does not equate to cause for leave to file a successive postconviction petition. See *People v. Dorsey*, 2021 IL 123010, ¶ 74; *People v. English*, 2013 IL 112890, ¶ 31. Finally, the State argues that arrests made on an investigative alert based upon probable cause are not unconstitutional, and, therefore, the defendant cannot establish prejudice based upon his failure to raise the issue on direct appeal or earlier postconviction proceedings.

¶ 18    Under the Act, a defendant may raise a claim of a constitutional violation in his trial or in sentencing. *People v. Edwards*, 2012 IL 111711, ¶ 21. The Act contemplates the filing of one postconviction petition. *Id.* ¶ 2. All issues decided on direct appeal or in an original postconviction petition are barred by the doctrine of *res judicata,* and all issues that could have been raised on direct appeal or in an original postconviction petition, but were not, are waived (*People v. Blair*, 215 Ill. 2d 427, 443 (2005)), unless the defendant can show both cause for, and prejudice from, failing to raise the claim in the earlier petition or makes a colorable claim of actual innocence (*People v. Robinson*, 2020 IL 123849, ¶ 42). The Act defines "cause" as "an objective factor that impeded [the petitioner's] ability to raise a specific claim during his or her initial post-conviction proceedings." 725 ILCS 5/122-1(f) (West 2020). To establish "prejudice," a petitioner must demonstrate that the claim not raised in an initial postconviction proceeding "so infected the trial that the resulting conviction or sentence violated due process." *Id.* "[A]t this early leave-to-file stage, the petitioner is not required to make the 'substantial showing' that will later be required at a second stage hearing after counsel is appointed." *People v. Walker*, 2022 IL App (1st) 201151, ¶ 20 (citing *Robinson*, 2020 IL 123849, ¶ 58). Rather, " 'leave of court to file a successive

postconviction petition should be denied only where it is clear from a review of the petition and attached documentation that, as a matter of law, the petitioner cannot set forth a colorable claim ***.' " *Id.* (quoting *People v. Sanders*, 2016 IL 118123, ¶ 24). Our review of the circuit court's denial of leave to file a successive postconviction petition is *de novo. Robinson*, 2020 IL 123849, ¶ 39.

¶ 19 The defendant in this case makes arguments that could have been, but were not, raised in his direct appeal; namely, that he was arrested without probable cause and that his inculpatory statement was the product of police coercion. Those issues are waived. See *Blair*, 215 Ill. 2d at 443.

¶ 20 The defendant acknowledges that, in his October 31, 2017, motion for leave to file a successive postconviction petition, he asserted, *inter alia,* that he received ineffective assistance of trial counsel when counsel "failed to challenge whether the State met its burden of proof at suppression hearing where petitioner['s] arrest and all evidence against him came as a result of an illegal arrest in his home on an investigative alert (not a warrant);" and that "the trial court erred in denying the motion to suppress where the State never established that the information relied upon was based on facts sufficient to establish probable cause to make an arrest U.S.C.A. Const. Amend." The petition also alleged that "an investigative alert is not a warrant to arrest, nor did it give Chicago police probable cause to enter the petitioner's home without consent to search and arrest him [at] 1:00 a.m." The trial court denied leave to file that successive petition, and this court affirmed the denial. *Murphy*, 2020 IL App (1st) 180256-U, ¶ ¶ 24–25. In the motion to file the successive postconviction petition which is the subject of this appeal, the defendant asserted that his appellate counsel on direct appeal was ineffective for "failing to challenge and raise [the] issue of [his] arrest by [the Chicago Police Department] based solely off an investigative alert issued by

a CPD Supervisor and not off sworn facts to a judge who issued a warrant." He argues that that his October 31, 2017, petition "did not directly raise the constitutionality of using investigative alert to arrest suspects without a warrant, nor did it address the Illinois Constitution, it is not the same as the one currently at issue." He concludes, therefore, that the claim raised in the petition at issue is not barred by the doctrine of *res judicata.* We disagree.

¶ 21    Although the defendant's October 31, 2017, petition was based on a claim of ineffective assistance of trial counsel and the instant petition is based on an allegation of ineffective assistance of appellate counsel, both petitions are based on a failure to challenge the defendant's arrest based on an investigative alert. The Act is not intended as a device to be used to obtain another hearing on a claim of the denial of a constitutional right that has already been decided. "This is so, even though the present petition attempts to change the character of the question previously advanced and decided, by describing them in different constitutional terms." *People v. Cox*, 34 Ill. 2d 66, 68 (1966). Because the trial court's denial of the defendant's October 31, 2017, motion for leave to file a successive postconviction petition claiming that his trial counsel was ineffective for having failed to challenge his arrest based on an investigative alert was affirmed on appeal, he is barred by the doctrine of *res judicata* from relitigating the issue of the propriety of his arrest based on an investigative alert by couching the claim in terms of ineffective assistance of appellate counsel. See *People v. Emerson*, 153 Ill. 2d 100, 106–07 (1992) (explaining that a postconviction petitioner cannot avoid the bar of *res judicata* by simply rephrasing his claim.); see also *People v. Fair*, 193 Ill. 2d 256, 268 (2000).

¶ 22    The defendant argues that the principles of fundamental fairness allow courts to relax the effects of the doctrines of *res judicata.* We believe that the cause-and-prejudice test embodied in the Act is appropriate for determining whether fundamental fairness requires relaxation of

procedural bars. See *People v. Pitsonbarger*, 153 Ill. 2d 264, 279 (2002). "To establish that fundamental fairness requires that a successive postconviction petition be considered on the merits, a defendant must show both cause and prejudice with respect to each claim presented." *People v. Morgan*, 212 Ill. 2d 148, 153 (2004).

¶ 23    Even assuming for the purpose of further analysis that the claim asserted in the successive petition which is the subject of this appeal is distinct from the claim raised in the successive petition for which leave to file was sought in the defendant's October 31, 2017, motion and, therefore, not barred under the doctrine of *res judicata,* we would still affirm the trial court's order denying leave to file, finding that the defendant is unable to satisfy the prejudice requirement for the filing of a successive postconviction petition.

¶ 24    Relying on the reasoning of the appellate majority in *Bass*, and the reasoning of the majority in *Bass*' progeny *Smith*, the defendant argues that his warrantless arrest based on an investigative alert violated the search and seizure clause of the Illinois Constitution (Ill. Const. 1970 art. I, § 6). He argues that he satisfied the Act's cause requirement for the filing of a successive petition because the decisions in *Bass* and *Smith* were not issued until well after the filing and dismissal of his initial postconviction petition. The defendant argues that he suffered prejudice because the evidence used to obtain his convictions was obtained as a result of his unconstitutional arrest.

¶ 25    The defendant acknowledges that the portion of the majority's decision in *Bass* which held that warrantless arrests made pursuant to an investigative alert are unconstitutional was vacated by the supreme court in *People v. Bass*, 2021 IL 125434, ¶ 31. He argues that the majority's decision in *Smith*, which, like the majority's decision in *Bass,* held that arrests made pursuant to an investigative alert violate the Illinois Constitution, supports his argument that he made a *prima*

*facie* showing of cause for failing to raise the claim that his arrest was unconstitutional in his initial postconviction petition.

¶ 26    In support of the trial court's order denying the defendant leave to file, the State argues that the defendant failed to make *prima facie* showing of cause for failing to raise the claim in his initial postconviction petition. The State notes that concerns over the use of investigative alerts and the constitutionality of their use as a substitute for arrest warrants had been raised in opinions of this court years before the majority decision in *Bass* was filed. The State points to the decision in *People v. Starks*, 2014 IL App (1st) 121169, wherein this court expressed concern over the use of investigative alerts in the place of arrest warrants. *Id.* ¶ 77. The State also references the special concurring opinion in *People v. Hyland*, 2012 IL App (1st) 110966, wherein Justice Salone noted that the use of investigative alerts to "sidestep" judicial review gives arrest-warrant power to the police and constitutes a violation of a suspect's constitutional rights. *Id.* ¶ 51 (Salone, J., specially concurring, joined by Neville, J.). The State concludes that the defendant's constitutional argument was available to him "long before *Bass* was decided." However, we find the State's reliance on the passages in *Starks* and *Hyland* to support its argument that the defendant cannot establish cause for having failed to raise the claim in an earlier postconviction petition is misplaced.

¶ 27    For the same reason that we rejected a similar argument by the State in *People v. Wimberly*, 2023 IL App (1st) 2200809, ¶¶ 14–15, we reject the argument here. In this case, the defendant filed his initial postconviction petition on January 1, 2011. That petition was dismissed by the circuit court in 2011. The court's decision in *Starks* was filed on June 4, 2014, and the decision in *Hyland* was filed on November 21, 2012. Having been filed years after the defendant's initial postconviction petition was filed and dismissed, neither the decision in *Starks* nor the decision in

*Hyland* could support an argument that the constitutional claim raised by the defendant in this case was available to him at the time that he filed his initial postconviction petition.

¶ 28    To satisfy the cause element necessary to obtain leave to file a successive postconviction petition, a defendant must establish that an objective factor impeded his ability to raise a specific claim during his initial postconviction proceedings. 725 ILCS 5/122-1(f) (West 2020). We believe that the defendant in this case has arguably satisfied that requirement. As the defendant correctly argues, new decisions can establish cause for raising a claim in a successive postconviction petition. See *People v. Womack*, 2020 IL App (3d) 170208, ¶ 18. And the decisions in *Bass* and *Smith*, which both hold that warrantless arrests made pursuant to an investigative alert violate the search and seizure clause of the Illinois Constitution, were decided years after the defendant's initial postconviction petition was filed and decided. Both the reasoning and holdings of the majorities in *Bass* and *Smith* relating to the unconstitutionality of warrantless arrests made pursuant to an investigative alert are novel and are not found in any reported decision predating the filing and dismissal of the defendant's initial postconviction petition. We conclude, therefore, that the defendant has arguably made a *prima facie* showing of cause for not having raised a claim that his warrantless arrest made pursuant to an investigative alert violated the search and seizure clause of the Illinois Constitution in his initial postconviction petition.

¶ 29    As noted earlier, unless the defendant can show both cause for, and prejudice from, failing to raise the claim in an earlier petition or makes a colorable claim of actual innocence, he cannot satisfy the statutory requirement for the filing of a successive postconviction petition. 725 ILCS 5/122-1(f) (West 2020); *Robinson*, 2020 IL 123849, ¶ 42. If a defendant is unable to set forth a colorable claim that so infected his trial such that the resulting conviction or sentence violated due

process, he is unable to satisfy the prejudice prong of the test necessary to obtain leave to file a successive postconviction petition.

¶ 30     In *Bass* and *Smith,* both plurality decisions, the majorities held that an arrest made without a warrant and pursuant to an investigative alert violates the search and seizure clause of the Illinois Constitution, even in cases where the investigative alert is supported by probable cause. See *Bass*, 2019 IL App (1st) 160640, ¶ 43, *aff'd in part, vacated in part,* 2021 IL 125434; *Smith*, 2022 IL App (1st) 190691, ¶¶ 58, 66. In *People v. Braswell*, 2019 IL App (1st) 172810, ¶ 37, the court declined to follow the holding in *Bass*, concluding that the case was wrongly decided. The *Braswell* court adopted the partial dissent in *Bass* and found that warrantless arrests made pursuant to an investigative alert supported by probable cause do not run afoul of the search and seizure clause of the Illinois Constitution. *Id.* As the State correctly notes, appellate decisions "both before and after the vacatur in *Bass,* uniformly sided with *Braswell*, 2019 IL App (1st) 172810, and upheld the constitutionality of investigative alerts issued by the CPD." *People v. Erwin*, 2019 IL App (1st) 200936, ¶ 17 (citing *People v. Harris*, 2022 IL App (3d) 200234, ¶ 12; *People v. Butler*, 2021 IL App (1st) 171400, ¶ 55; *People v. Little*, 2021 IL App (1st) 181984, ¶¶ 63–64; *People v. Simmons*, 2020 IL App (1st) 170650, ¶¶ 62–64; *People v. Bahena*, 2020 IL App (1st) 180197, ¶¶ 59–64; and *People v. Thornton*, 2020 IL App (1st) 170753, ¶¶ 45–50). More recently, this court in *Wimberly* rejected the holdings in both *Bass* and *Smith* that a warrantless arrest made pursuant to an investigative alert violates the search and seizure clause of the Illinois Constitution, even in cases where the investigative alert is supported by probable cause. See *Wimberly*, 2023 IL App (1st) 220809, ¶ 26. For the reasons which follow, we reaffirm our reasoning and holding in *Wimberly*.

¶ 31     The supreme court in *People v. Holmes*, 2017 IL 120407, noted that both the fourth amendment to the United States Constitution (U.S. Const., amend IV) and article I, section 6, of

the Illinois Constitution guarantee citizens the right to be free from unreasonable searches and seizures. *Id.* ¶ 25. The supreme court held that "we construe the search and seizure clause of our state constitution in accordance with the United States Supreme Court's interpretation of the fourth amendment unless any of the narrow exceptions to lockstep interpretation apply." *Id.* ¶ 24.

¶ 32 According to the majority in *Bass*, a "critical difference" exists between the fourth amendment to the United States Constitution and article I, section 6, of the Illinois Constitution, justifying a departure from the general proposition that the search and seizure clause of our state constitution is construed in accordance with the United States Supreme Court's interpretation of the fourth amendment. The "critical difference" identified by the majority in *Bass* is the provision in the fourth amendment which provides that no warrants for arrest shall issue, "but upon probable cause, supported by Oath or affirmation" (U.S. Const., amend IV), compared to the Illinois Constitution which states that "[n]o warrant shall issue without probable cause supported by affidavit" (Ill. Const. 1970 art. I, § 6). *Bass*, 2019 IL App (1st) 160640, ¶ 3. As we found in *Wimberly*, 2023 IL App (1st) 220809, ¶ 22, this perceived distinction is the underpinning of the *Bass* court's conclusion that the Illinois Constitution, unlike the United States Constitution, requires, in the ordinary case, a warrant to issue before an arrest can be made and that arrests based on investigative alerts violate that rule. See *Bass*, 2019 IL App (1st) 160640, ¶ 62. We concluded that "[t]he *Bass* court's conclusion in that regard appears to be the justification for its holding that warrantless 'arrests based solely on investigative alerts, even those supported by probable cause, are unconstitutional under the Illinois Constitution.' " *Wimberly*, 2023 IL App (1st) 220809, ¶ 22 (quoting *Bass*, 2023 IL App (1st) 220809, ¶ 43).

¶ 33 The supreme court in *People v. Caballes*, 221 Ill. 2d 282 (2006), held that the phrase "supported by affidavit" in the search and seizure provision of the Illinois Constitution of 1870

(Ill. Const. 1870, art. II, § 6), a phrase which is identical to the one contained in article I, section 6, of the Illinois Constitution of 1970, is "virtually synonymous with 'by Oath of affirmation' in the fourth amendment." *Id.* at 291. As we concluded in *Wimberly*, 2023 IL App (1st) 220809, ¶ 23, "the perceived 'critical difference' between the fourth amendment to the United States Constitution and article I, section 6, of the Illinois Constitution which underlies the *Bass* court's holding that arrests based solely on investigative alerts, even those supported by probable cause, are unconstitutional under the Illinois Constitution is nonexistent and cannot form the basis of an exception to the general rule that the search and seizure clause of our state constitution is construed in accordance with the United States Supreme Court's interpretation of the fourth amendment of the United States Constitution."

¶ 34   The majority in *Bass* recognized that the fourth amendment of United States Constitution allows for warrantless arrests so long as the police have probable cause to arrest the suspect. See *Bass*, 2019 IL App (1st) 160640, ¶ 37.  In *United States v. Watson*, 423 U.S. 411, 417 (1976), the Supreme Court held that, in determining whether an arrest passes scrutiny under the fourth amendment, the necessary inquiry is not whether there was a warrant or whether there was time to get one, but whether there was probable cause to make the arrest.

¶ 35   We construe the search and seizure clause of our state constitution in accordance with the United States Supreme Court's interpretation of the fourth amendment on the issues of warrantless arrests. We believe, contrary to the holdings in *Bass* and *Smith,* that in determining whether a warrantless arrest pursuant to an investigative alert passes scrutiny under article I, section 6, of the Illinois Constitution, the relevant inquiry is whether the police had probable cause to make the arrest.

¶ 36    In his reply brief, the defendant argues that in his petition which is the subject of this appeal he expressly alleged that he was arrested without probable cause, distinguishing this case from the facts present in *Wimberly.* As noted earlier, however, the defendant did not argue on direct appeal that his arrest was made without probable cause and, as a consequence, the issue has been waived. We note further, based upon the testimony of Detective Forberg during the pre-trial motion to quash the defendant's arrest, that Williams admitted to his involvement in the robbery and shooting of Floyd, implicated the defendant, and described in detail the defendant's involvement, including the defendant's statement, "I just shot him in the ass." Willians' statement to the police was made before the issuance of an investigative alert for the arrest of the defendant. Probable cause may be established from the collective knowledge of the police officers working in concert investigating a crime, even if that information is not specifically known by the officer making the arrest. *People v. Buss*, 187 Ill. 2d 144, 204 (1999).

¶ 37    Based on the foregoing analysis, we reject the holding of the majorities in *Bass* and *Smith* that a warrantless arrest made pursuant to an investigative alert violates the search and seizure clause of the Illinois Constitution, even in cases where the investigative alert is supported by probable cause. We conclude that a warrantless arrest made pursuant to an investigative alert does not violate the Illinois Constitution so long as the alert is supported by probable cause.

¶ 38    In this case, the defendant has waived any argument that his arrest was made without probable cause by failing to raise the issue on direct appeal. As a consequence, he cannot establish that he suffered prejudice by having failed to raise a claim that his arrest pursuant to an investigative alert violated the search and seizure provision of the Illinois Constitution in an earlier postconviction petition. Therefore, we affirm the circuit court's order denying the defendant leave to file a successive postconviction petition.

¶ 39    Affirmed.