# Illinois Official Reports

## Appellate Court

---

**People v. Henderson, 2014 IL App (2d) 121219**

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DARVIN T. HENDERSON, Defendant-Appellant. |
| District & No. | Second District<br>Docket No. 2-12-1219 |
| Filed | June 25, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The summary dismissal of defendant's *pro se* postconviction petition alleging his actual innocence of first-degree murder and attempted first-degree murder was reversed and the cause was remanded for further proceedings, since the affidavit of the victim of the attempted first-degree murder claiming that the victim was "confident," "by personal knowledge," that defendant was not involved in the shooting constituted newly discovered, material, and noncumulative evidence that was sufficient to allow the proceedings to move to the second stage and would likely change the result after a new trial. |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 07-CF-1707; the Hon. T. Clint Hull, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on
Appeal

Peter A. Carusona and Kerry J. Bryson, both of State Appellate
Defender's Office, of Ottawa, for appellant.

Joseph H. McMahon, State's Attorney, of St. Charles (Lawrence M.
Bauer and Victoria E. Jozef, both of State's Attorneys Appellate
Prosecutor's Office, of counsel), for the People.

Panel

PRESIDING JUSTICE BURKE delivered the judgment of the court,
with opinion.
Justices Schostok and Birkett concurred in the judgment and opinion.

## OPINION

¶ 1      Defendant, Darvin T. Henderson, appeals from a judgment summarily dismissing his *pro se* petition for postconviction relief, which raised claims of actual innocence and ineffective assistance of trial counsel. We reverse and remand for second-stage proceedings.

¶ 2                              I. BACKGROUND

¶ 3      Following a bench trial, defendant was found guilty of the first-degree murder (720 ILCS 5/9-1(a)(1), (a)(2) (West 2006)) of Rashod Waldrop and of the attempted first-degree murder (720 ILCS 5/8-4(a), 9-1(a) (West 2006)) of Jonathan Phillips. Defendant was sentenced to serve an aggregate of 80 years' imprisonment. Defendant appealed, arguing that (1) the State failed to prove him guilty of the offenses beyond a reasonable doubt; (2) the trial court abused its discretion by allowing Phillips to invoke his privilege against self-incrimination or, alternatively, defendant was denied due process of law when the prosecutor refused to grant Phillips immunity; (3) the trial court abused its discretion by admitting statements, pursuant to the co-conspirator exception to hearsay, made by codefendant Tuan Fields; and (4) posttrial counsel provided ineffective assistance. We rejected each of the claims and affirmed defendant's convictions. *People v. Henderson*, No. 2-09-0815 (2011) (unpublished order under Supreme Court Rule 23).

¶ 4      A detailed recitation of the facts can be found in our order. For present purposes, a brief summary will suffice. Additional facts will be noted as necessary in the course of our analysis.

¶ 5      In April 2007, defendant (a/k/a Bling), Waldrop, Phillips, Robert Moore, and Earl James were members of the "Gangster Disciples," and Fields (a/k/a Don Juan) was a member of the "Maniac Latin Disciples." Within the Gangster Disciples factions, Waldrop and Phillips were aligned with the "Low Ends" and defendant was aligned with the "1200s."

¶ 6      Around midnight April 29-30, 2007, someone discharged a firearm at Waldrop and Phillips as they descended the stairwell at the River Street Apartments in Aurora, Illinois.

Waldrop ran to a car driven by his girlfriend, Teneka Davis. Waldrop flung himself into the backseat and said "they shot me." Waldrop later died at the hospital. Aurora police officer Peter Wullbrandt received a dispatch and was the first to arrive on the scene. Inside the lobby of the River Street Apartments, he saw several people crouched over Phillips, who had been shot in the head. When Officer Donald Flower arrived at the scene, he observed Phillips lying on the lobby floor, bleeding from his head. Phillips did not die. He later testified at defendant's trial but asserted his privilege against self-incrimination. The forensic pathologist who performed an autopsy on Waldrop believed that his death was caused by a gunshot wound.

¶ 7    The State theorized that defendant shot Waldrop and Phillips to avenge an earlier altercation between the three men during which Waldrop and Phillips took defendant's gold chain and refused to return it. They told defendant to get it back "in blood." Fields obtained a gun and gave it to defendant outside the apartment building, and the two men went into the lobby of the building. Defendant hid in the stairwell while Fields lured the victims from an apartment and down the stairwell, where they were shot. No gold chain or gun was found at the scene. The police did not find any spent cartridges at the scene but they did find bullet fragments. Because only bullet fragments were found, the police surmised that defendant used a revolver.

¶ 8    At trial and on direct appeal, defendant argued that his convictions were based primarily on the recanted prior inconsistent statements of Fields and another individual and the testimony of a jailhouse snitch, an intoxicated witness who claimed to have seen defendant in the area before the shooting, an intoxicated and high witness who said he saw Fields receive a gun from Mike Towns shortly before the shooting, and Davis, who said she saw defendant run from the River Street Apartments but who identified defendant solely from his height and build as he ran behind her car in the dark. Defendant further argued that his attempt to present Phillips' testimony was thwarted by Phillips' assertion of his privilege against self-incrimination in the face of the State's contention that he could be prosecuted for his conduct during the earlier altercation, which took place in Farnsworth Park and continued at a gas station. The State declined to grant Phillips immunity for his testimony.

¶ 9    On March 29, 2012, defendant filed a *pro se* petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 to 122-7 (West 2012)). Defendant maintained that he was actually innocent of the offenses. Defendant alleged substantial violations of his constitutional rights, based upon the insufficiency of the evidence presented at trial, prosecutorial misconduct, ineffective assistance of trial counsel, and ineffective assistance of appellate counsel.

¶ 10    Defendant supported the petition with several statements, some of which were not notarized. Defendant submitted an affidavit from Phillips in which Phillips stated that he was "confident," "by personal knowledge," that defendant did not have anything to do with the shooting of Waldrop and himself, that he did not "wish to divulge any further about the shooting, but know[s] that [defendant] *did not* take *any* part in what transpired April 24th to April 30th, 2000," and that he wrote the affidavit because he "could not allow, as long as [he] could help it, for [defendant] to be imprisoned for a crime he has nothing to do with." (Emphases in original.)

¶ 11    The petition also attached an affidavit from Dale Johnson, who chased the shooter from the scene and averred that, to the best of his knowledge, the shooter was not defendant.

Johnson was not called as a witness at trial. He stated that he did not come forward before the trial because defendant's attorney never contacted him.

¶ 12    Also attached was an affidavit from Michael Towns, who was not called as a witness at trial. Towns stated that he was willing to testify on Fields' behalf that he did not give Fields a gun, Fields did not have a gun in his possession, and Fields did not fire a gun in Farnsworth Park. According to Towns, he called Fields' attorneys, not defendant's, and left messages telling them that he wanted to testify, but he never received any return calls.

¶ 13    Defendant attached an affidavit from Eric Smith, who was not called as a witness at trial. He averred that he asked defendant if he was coming to the party at the River Street Apartments the night the offenses took place and that defendant told him that he was with a "lady friend" and was not coming to the party. Smith stated that he had been willing to testify at trial.

¶ 14    Defendant provided an affidavit from Reggie Burton, who was not called as a witness at trial. Burton averred that defendant was not at the apartment complex when the shooting took place. Burton also stated that defendant was not involved in the earlier altercation at Farnsworth Park and the nearby gas station. He would testify that he did not see Phillips or Waldrop with defendant's chain. Burton also stated that nobody told defendant to "get it in blood."

¶ 15    Also attached to the petition were written statements from three witnesses, Cevin Stanford, Dwayne Shipp, and Jose Salinas, each of whom spent time in jail with defendant and did not testify at trial. Each witness wrote that he would testify that James was not being truthful when he testified against defendant. Each would testify that defendant and James were not friends, did not spend time together, and did not talk about their cases with each other in the jail, contradicting James' trial testimony. In another attached statement, Robert Moore alleged that his trial testimony was untrue and that he testified against defendant because he wanted to secure his own release from jail.

¶ 16    Baron McClung provided a statement reaffirming his trial testimony that defendant was not involved in the shooting and recanting his pretrial statements to the police that defendant was the shooter. Fields provided a two-page affidavit stating that defendant was not the shooter. Shauntel Andrews and Maurice Culpepper provided affidavits stating that defendant was with them at Culpepper's home when the shooting took place. Their affidavits are consistent with their trial testimony.

¶ 17    The trial court summarily dismissed defendant's petition. The court initially refused to consider any of the unnotarized statements that were attached to the petition. The court found that defendant had not established newly discovered evidence of actual innocence; that *res judicata* barred his claim that the court erred in finding him guilty; that his claim of prosecutorial misconduct lacked factual support; and that he had not established ineffective assistance of trial or appellate counsel.

¶ 18    The trial court specifically stated in its memorandum of opinion that, in our order, we had noted that defendant's posttrial motion included a transcript of an interview in which Phillips stated that defendant was not the person who shot him. The trial court stated that we had denied defendant's claim that the trial court erred when it refused to make Phillips testify or to compel the State to grant Phillips immunity. The trial court further observed that defendant did not present any evidence to establish that Phillips would forgo reasserting his fifth

amendment right against self-incrimination if called to testify. Thus, the court concluded that any argument as to Phillips was *res judicata*.[1]

¶ 19    In his motion to reconsider, defendant alleged, among other things, that the trial court erred in refusing to consider his unnotarized witness statements and that the court had held him to too high a standard in requiring that he establish his claims rather than evaluating whether he had met the low "gist" standard. Defendant attached several affidavits, including his own and those of Salinas and Shipp, to his motion to reconsider. In a supplement to the motion to reconsider, defendant pointed out that he had raised a freestanding claim of actual innocence supported by affidavits and other evidence. The court denied the motion to reconsider and the supplement to the motion. Defendant timely appeals, challenging on two grounds the first-stage dismissal of his *pro se* postconviction petition. First, he contends that his petition raised an arguable claim of actual innocence. Second, he asserts that he raised an arguable claim of ineffective assistance of trial counsel.

¶ 20                                          II. ANALYSIS

¶ 21    Summary dismissal of a postconviction petition is reviewed *de novo*. *People v. Brown*, 236 Ill. 2d 175, 184 (2010). Initially the State argues that the unnotarized statements written by Stanford, Shipp, and Salinas were properly rejected by the trial court. However, defendant included notarized affidavits from Salinas and Shipp with his motion to reconsider, and it appears from the record that the trial court considered them. The State concedes that new evidence attached to a motion to reconsider the dismissal of a postconviction petition can be considered when it supports a preexisting claim. See *People v. Coleman*, 2012 IL App (4th) 110463, ¶ 62. The court's order denying the motion to reconsider did not reject the affidavits for lack of due diligence; the court simply denied the motion to reconsider. We thus will consider those affidavits.

¶ 22    At the first stage of postconviction proceedings, the defendant must set forth only the gist of a constitutional claim. *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). The threshold is low because most petitions are drafted by defendants with little legal knowledge or training. *Id*. The low threshold, however, does not mean that the defendant is excused from providing any factual detail to support the alleged constitutional violation. *Id*. at 10. During the first stage, the court must determine whether the petition is frivolous or patently without merit. *Id*. A petition is frivolous or patently without merit only if the petition has no arguable basis either in law or in fact. *Id*. at 12.

¶ 23                              A. Claim of Actual Innocence

¶ 24    A claim of actual innocence is cognizable in a postconviction petition because the imprisonment of an innocent person violates the due process clause of the Illinois

---

[1]We specifically held that, given the potential exposure to being charged with offenses arising out of taking defendant's chain and later destroying it, we could not say that the trial court abused its discretion by permitting Phillips to invoke his fifth amendment privilege. *Henderson*, No. 2-09-0815, slip op. at 19. As to the State's violating his due process right to a fair trial by refusing to grant Phillips immunity to testify, we held that nothing in the record indicated that the refusal distorted the fact-finding process, especially when the parties stipulated to Phillips' identification of Fields as the shooter through another witness's testimony. *Id.* at 21.

Constitution, as do procedural barriers to having a claim of innocence adjudicated on the merits. *People v. Washington*, 171 Ill. 2d 475, 489 (1996). A postconviction petition presents an actual innocence claim where there is evidence that is (1) newly discovered, (2) material and not merely cumulative, and (3) of such conclusive character that it would probably change the result on retrial. *People v. Ortiz*, 235 Ill. 2d 319, 333 (2009); *People v. Molstad*, 101 Ill. 2d 128, 134 (1984). The new evidence need not prove actual innocence; it is enough that " 'all of the facts and surrounding circumstances *** should be scrutinized more closely to determine guilt or innocence.' " *Ortiz*, 235 Ill. 2d at 337 (quoting *Molstad*, 101 Ill. 2d at 136).

¶ 25    Defendant asserts that his petition and supporting documentation raised the gist of a claim of actual innocence. As noted, defendant attached to the petition an affidavit from Phillips, who stated that defendant did not have anything to do with the shooting and that defendant did not take part in the incident. Defendant contends that this evidence could not have been discovered prior to trial by the exercise of due diligence, was not cumulative, and was of such conclusive character that it would probably change the result on retrial.

¶ 26    The State asserts that Phillips' affidavit does not meet the definition of newly discovered evidence, because defendant was aware of Phillips as a potential witness. The State also contends that the affidavit was vague and inconclusive such that it did not warrant further consideration.

¶ 27    In *Molstad*, the defendant filed a posttrial motion based on affidavits in which his codefendants indicated that the defendant was not present during the crime. *Molstad*, 101 Ill. 2d at 132. The supreme court found that these affidavits constituted newly discovered evidence, even though the defendant knew of the evidence before trial. *Id.* at 134. The affidavits were prepared after the codefendants' guilty verdicts, but before their sentencing. *Id.* Because their testimony would have incriminated them, their testimony could not have been discovered with the exercise of due diligence, as the defendant could not force them to waive their fifth amendment right against self-incrimination. *Id.* at 135.

¶ 28    Additionally, the court found that the evidence was likely to produce a different result on retrial because it, along with the defendant's denial of his presence during the crime and his parents' alibi evidence, would have been balanced against the single eyewitness's testimony. *Id.* at 135-36. The court concluded that the evidence should have been scrutinized more closely to determine the defendant's guilt or innocence. *Id.* at 136.

¶ 29    The State acknowledges that the present case shares circumstances with *Molstad*, but it argues that *Molstad* is distinguishable. The State asserts that the facts of this case are closer to those in *People v. Jones*, 399 Ill. App. 3d 341 (2010).

¶ 30    In *Jones*, the defendant filed a postconviction petition alleging, *inter alia*, actual innocence. *Id.* at 353. In support, he attached the affidavit of his codefendant, who stated that the codefendant was "solely responsible" for the victim's murder, that he falsely accused the defendant of being his accomplice, and that the defendant was not with him at the time of the murder. *Id.* at 354. The First District Appellate Court found that this affidavit did not constitute newly discovered evidence. *Id.* at 364. The court noted that, whereas in *Molstad* the codefendants put themselves at risk of a harsher penalty at sentencing, the codefendant's affidavit was executed some 17 months after the codefendant's trial and thus it had no bearing on his ultimate disposition. *Id.* at 365. Further, the affidavit's concession that the codefendant was "solely responsible" was "simply a *non sequitur*"; it revealed no facts upon

which the codefendant could be pursued by the prosecution. *Id.* at 366. Finally, the affidavit was flawed because it contained no statement that the codefendant would testify to the facts alleged. As such, the court found that the affidavit did not establish the availability of the alleged evidence and that the defendant's claim was meritless. *Id.* at 366-67.

¶ 31    The State argues that Phillips' affidavit similarly does not qualify as newly discovered evidence, because he executed it at least four years after the incident for which Phillips had invoked his right to avoid self-incrimination. The State maintains that, where it is unknown whether the prosecution pursued Phillips for his involvement in the events of April 29-30, 2007, there is no evidence that Phillips is subjecting himself to the same risk as the codefendants in *Molstad*, who were still awaiting sentencing for their involvement in the crime at issue. The State notes that Phillips's statements now have no bearing upon his ultimate disposition and that this is especially true where Phillips' affidavit does not inculpate himself. The State further asserts that, like the affidavit in *Jones*, Phillips' affidavit is "merely a benign gesture where he makes vague statements about the events at the River Street Apartments rather than revealing any facts."

¶ 32    We find applicable to this case the general proposition that a witness who takes the fifth and later gives an affidavit presents newly discovered evidence. See *Molstad*, 101 Ill. 2d at 134-35. We are especially mindful that defendant could not force Phillips to testify at trial, because Phillips had exercised his fifth amendment right to remain silent due to the State's threat to pursue charges against him. Now, the State is using this against defendant, asserting that the evidence supporting his claim of actual innocence was not newly discovered because defendant was aware of Phillips as a potential witness prior to, or at the time of, trial.

¶ 33    Newly discovered evidence is evidence that was unavailable at trial and could not have been discovered sooner through due diligence. *People v. Coleman*, 2013 IL 113307, ¶ 96. The State cannot have it both ways. It cannot seek to prevent defendant from obtaining testimony from a key witness like Phillips and then claim that this evidence could have been discovered sooner through the exercise of due diligence. No amount of diligence could have forced Phillips to waive his fifth amendment right to avoid self-incrimination if Phillips did not choose to do so during the trial. See *Molstad*, 101 Ill. 2d at 135.

¶ 34    In addressing the conclusiveness of the affidavit in *Jones*, the court noted that it was suspect because the affidavit contained vague statements about the events in question and did not state that the codefendant was willing to testify. Thus, the *Jones* court held that the actual innocence claim based on the affidavit was frivolous. *Jones* relied heavily on *People v. Brown*, 371 Ill. App. 3d 972 (2007). *Brown* involved a claim of ineffective assistance of counsel for failing to present the testimony of a codefendant. The codefendant provided a favorable affidavit but did not indicate that he would have waived his right against self-incrimination if he had been called at the defendant's trial. The court found the affidavit insufficient to warrant proceeding to an evidentiary hearing on the claim. *Id.* at 981. However, *Brown* involved a second-stage postconviction proceeding, where the defendant has the higher burden of making a substantial showing of a violation. Also, *Brown* involved a claim of ineffective assistance, not actual innocence. Unlike in *Brown*, here, at the first stage, defendant needed only to state the gist of a claim of actual innocence to warrant proceeding to the second stage. The State is critical of Phillips' affidavit because he did not specifically state that he would testify consistently with it and would waive his fifth amendment right.

We agree that Phillips' affidavit does not state that he would testify, but it does imply that any potential testimony would be favorable.

¶ 35    On retrial, a different result would be probable if the trier of fact were to consider Phillips' testimony. The affidavit provides an arguable basis for a claim of actual innocence in that it undermines the State's theory that defendant was the shooter. Where none of the several eyewitnesses to the shooting identified defendant as the shooter and where no physical evidence linked defendant to the shooting, testimony from the surviving victim exonerating defendant arguably would carry weight with the trier of fact. Phillips might well have witnessed the shooting and this evidence alone arguably could change the result on retrial. This does not mean that defendant is innocent, but all of the facts and surrounding circumstances, including Phillips' testimony, should be scrutinized more closely to determine defendant's guilt or innocence.

¶ 36    The trial court's only reason for dismissing defendant's actual innocence claim was *res judicata*. *Res judicata* bars claims that were previously raised and decided on direct appeal. *People v. Rogers*, 197 Ill. 2d 216, 221 (2001). Defendant's claim of actual innocence, premised in part on Phillips' affidavit, was not previously raised or decided, and therefore *res judicata* does not bar its consideration here.

¶ 37    In sum, in light of the low burden placed upon a petitioner at the first stage of a postconviction proceeding, we hold that defendant presented sufficient evidence to support an actual innocence claim based on newly discovered evidence. See *People v. Edwards*, 197 Ill. 2d 239, 244 (2001). It is at least arguable that Phillips' affidavit, which suggests that defendant did not shoot Phillips and Waldrop, was newly discovered, material and noncumulative, and so conclusive as to probably change the result on retrial. See *Hodges*, 234 Ill. 2d at 20-21. We are not making any judgment as to the outcome of the case. We hold only that defendant has alleged sufficient facts to avert the first-stage dismissal of his *pro se* postconviction petition and advance it to a second-stage proceeding under the Act, where counsel can be appointed and, if the State moves to dismiss the petition, "the circuit court must determine whether the petition and *any* accompanying documents make a substantial showing of a constitutional violation." (Emphasis added.) *Edwards*, 197 Ill. 2d at 246.

¶ 38                              B. Ineffective Assistance of Counsel

¶ 39    Defendant argues that the trial court erred in summarily dismissing his *pro se* postconviction petition where he raised the gist of a claim of ineffective assistance of counsel. Defendant asserts that his trial counsel was arguably deficient because he did not investigate and present the testimony of possibly exculpatory witnesses Johnson and Smith and that trial counsel's failure arguably prejudiced him. The State responds that this claim is barred by *res judicata*.

¶ 40    We note that the affidavits of Johnson and Smith could not have been raised by appellate counsel, because they were not part of the trial court record. As the facts upon which the claim is based were outside the record on direct appeal, *res judicata* does not act as a bar. See *People v. Wilson*, 2013 IL App (1st) 112303, ¶¶ 16-18.

¶ 41    In any event, we need not address defendant's contentions regarding ineffective assistance of counsel, because partial dismissals are not permitted at the first stage of proceedings under the Act. Upon reversal of a summary dismissal, the Act mandates that "the

circuit court must docket the entire petition, appoint counsel, if the petitioner is so entitled, and continue the matter for further proceedings." (Emphasis omitted.) *People v. Rivera*, 198 Ill. 2d 364, 371 (2001); see also *Hodges*, 234 Ill. 2d at 22.

¶ 42                                III. CONCLUSION

¶ 43        For the foregoing reasons, the trial court's dismissal of defendant's postconviction petition is reversed and the cause is remanded for further proceedings.

¶ 44        Reversed and remanded.