2025 IL App (2d) 240566-U
No. 2-24-0566
Order filed December 31, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 07-CF-1707 |
| DARVIN T. HENDERSON, | ) ) | Honorable Kimberly M. DiGiovanni, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE JORGENSEN delivered the judgment of the court.
Justices Hutchinson and Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*: Postconviction counsel's certifications were not facially deficient. Further, the court did not err in dismissing defendant's postconviction ineffective-assistance claim during second-stage proceedings. Affirmed.

¶ 2    Defendant, Darvin T. Henderson, appeals from the denial of his petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2022)). We affirm.

¶ 3                                  I. BACKGROUND

¶ 4                          A. Trial and Direct Appeal

¶ 5    Following a bench trial, defendant was convicted of the first-degree murder (720 ILCS 5/9-

1(a)(1) (West 2006)) of Rashod Waldrop and attempted first-degree murder (*id.* §§ 8-4(a), 9-1(a)) of Jonathan Phillips. The trial court sentenced defendant to 80 years' imprisonment. We rejected defendant's arguments on direct appeal. *People v. Henderson*, No. 2-09-0815, 2011 WL 10100837 (2011) (unpublished order under Supreme Court Rule 23). Later, we reversed the trial court's summary dismissal of defendant's *pro se* petition for postconviction relief and remanded for second-stage proceedings. *People v. Henderson*, 2014 IL App (2d) 121219, ¶ 43.

¶ 6        Detailed summaries of the facts can be found in our two prior orders. However, for context here, we note that, around midnight between April 29 and 30, 2007, someone discharged a firearm at Waldrop and Phillips as they descended a stairwell at the River Street Apartments in Aurora. Waldrop ran to a car driven by his girlfriend, Teneka Davis, told her, "they shot me," and later died. Phillips was shot in the head but did not die. He was later called to testify at defendant's trial but asserted his privilege against self-incrimination and no immunity was granted.

¶ 7        The State theorized that defendant shot Waldrop and Phillips to avenge an earlier altercation between the three men during which Waldrop and Phillips took defendant's gold chain and refused to return it, telling him to "get it in blood." The State alleged that co-defendant Tuan Fields obtained a gun, gave it to defendant, and then lured Waldrop and Phillips from an apartment and down a stairwell. Defendant, who had been hiding in the stairwell, shot them.

¶ 8        Relevant to this appeal, Davis testified that, while outside waiting for Waldrop, she saw a man run to the back of the apartment building. He wore a mask with the eyes cut out, white gloves, a dark blue or black hoodie with the hood up, and carried a gun. She recognized him as defendant, based on his build and height. Davis also saw Dale Johnson run out of the building, heading in the same direction as defendant. On cross-examination, however, Davis agreed that it was "pitch dark," she could see only the man's eyes, and admitted that she told a detective she was not sure

whether the man she saw was defendant or his brother. A surveillance video clip showed Waldrop walk through a stairwell door and hit the ground, a hooded man run past Waldrop, and Johnson run after the hooded man.

¶ 9    Defendant presented evidence that he was not present at the scene. Specifically, Ashley Irvin testified that she left the apartment building and encountered a group of men outside, but defendant was not one of them. Further, Shauntel Andrews and Maurice Culpepper testified that, at the time of the shooting, defendant was with them playing video games at Culpepper's house.

¶ 10    When announcing its ruling, the trial court noted that the primary issue was the shooter's identity, that Davis was the only witness who identified defendant as the shooter, and that her identification was primarily based on her observations from outside the building after the shooting occurred. The court noted multiple weaknesses with her testimony and found that "Davis's identification of the defendant as the person in the hoodie is suspect." However, it ultimately found portions of her testimony consistent with other evidence that, collectively, supported a finding of guilt.

¶ 11    At trial and on direct appeal, defendant argued that his convictions were based primarily on recanted prior inconsistent statements; the testimony of a jailhouse snitch; statements from intoxicated witnesses; and testimony from Davis, who said she saw defendant run away from the apartment building but who identified him solely from his height and build as he ran behind her car in the dark. Further, defendant argued that his attempt to present Phillips's testimony was thwarted by Phillips's assertion of his privilege against self-incrimination in the face of the State's contention that he could be prosecuted for his conduct during the earlier "gold chain" altercation, and the State's refusal to grant Phillips immunity for his testimony. As noted, we rejected these claims on appeal.

¶ 12                    B. *Pro Se* Postconviction Petition and Appeal

¶ 13    On March 29, 2012, defendant filed a *pro se* petition under the Act.  Defendant raised a claim of actual innocence and alleged substantial violations of his constitutional rights, based upon the insufficiency of the evidence presented at trial, prosecutorial misconduct, and ineffective assistance of both trial and appellate counsel.  Defendant supported his petition with several attached statements and exhibits.  Relevant to this appeal, he attached an affidavit from Johnson, who defendant claimed, "chased the actual shooter but could not catch him, yet avers it was not [defendant] he chased."  Defendant claimed that he and his family informed trial counsel of the "potential and valuable alibi defense," in that Johnson was filmed on surveillance camera chasing "the shooter" and stood ready to testify it was not defendant he chased, but counsel did not attempt to interview him.  Defendant also claimed that Johnson wanted to testify at trial, but defense counsel did not call him.

¶ 14    Two affidavits from Johnson appear in the record.  The first affidavit, dated May 26, 2011, attested that he was "present" when the shooting occurred and "witnessed and chased a black-hooded person from the building northward but was unable to apprehen[d] the individual.  To my best knowledge this person was not [defendant]."  Johnson averred that "the reason why I didn't come forward [is] because [defendant's] lawyer never contacted me."

¶ 15    The second affidavit, dated October 25, 2013, again attested that he was "present" when the shooting occurred.  Further, "I witnessed and chased a black hooded person northbound from the building that night but was unable to apprehend the individual."  Johnson attested that the person he chased was not "the person I know who's [*sic*] name is [defendant]."  Finally, he explained that he was willing to come to court if needed and "would have appeared in court" for defendant's trial, but he was never contacted by defendant's trial attorney.

¶ 16    On appeal, we determined that defendant's actual-innocence claim, based on an affidavit from Phillips, sufficed to survive summary dismissal. *Henderson*, 2014 IL App (2d) 121219, ¶ 37. Thus, as the Act does not permit partial dismissals at the first stage, we reversed and remanded the entire petition for further proceedings. *Id.* ¶¶ 41-44.

¶ 17                    C. Second- and Third-Stage Proceedings

¶ 18    On remand, the court appointed the Kane County Public Defender's office to represent defendant on his postconviction petition. Ultimately, on February 7, 2019, and January 16, 2020, counsel filed on defendant's behalf two amended petitions for postconviction relief, streamlining defendant's claims, summarizing portions of the evidence, and attaching additional, updated affidavits (including, it appears, some from witnesses whose affidavits had not been attached to the initial *pro se* petition). Both amended petitions contained identical certificates pursuant to Illinois Supreme Court Rule 651(c) (eff. July 1, 2017). Counsel represented in the certificates,

> "1. *That I have read the reports of proceedings prepared by the official court reporter in the instant cause comprising of 974 pages of transcripts.*
>
> 2. That I have had an on-going dialogue and consulted with [defendant] in person and by telephone regarding his claims of deprivation of constitutionally-protected rights which led to his conviction herein.
>
> 3. That I have reviewed in excess of 707 pages of discovery materials and numerous videos purportedly tendered to [defendant]'s trial counsel prior to the trial of this case.
>
> 4. That I have read the brief and argument submitted to the Appellate Court of Illinois for the Second Judicial District on [defendant]'s behalf by his appellate counsel; further, I have reviewed the [S]tate's reply brief submitted to the Second District Court.

5. That I have read the Rule 23 Order issued by the Second District Court under their case number 2-09-0815 affirming the conviction.

6. That I have read the petition for leave to appeal submitted on [defendant]'s behalf to the Supreme Court of Illinois in their case number 11-8770.

7. That I have reviewed discovery materials in a related co-defendant's case where several witnesses provided relevant testimony at trial and information to investigators.

8. That I have directed an investigator of the Kane County Public Defender's Office to interview witnesses in preparation of filing an amended petition for post-conviction relief.

9. That I have conducted my own limited investigation in preparation of filing an amended petition for post-conviction relief.

10. That I have read and reviewed [defendant]'s *pro se* pleadings and I have advised [defendant] which of his contentions are meritorious and which allegations should be withdrawn.

11. *That I have advised [defendant] of my proposed amendments to his pro se pleadings, which I believe are necessary for an adequate presentation of [defendant]'s contentions.*" (Emphases added.)

¶ 19 As relevant here, in addition to the actual-innocence claim, the amended petitions alleged ineffective assistance of trial counsel based upon counsel's alleged failure to undertake a reasonable pretrial investigation or to subpoena and call numerous witnesses at trial that would have testified on defendant's behalf. In particular, according to the petition, Johnson was present in the stairwell with Waldrop and Phillips when the shooting took place. He witnessed and chased a black-hooded person from the building but was unable to apprehend that person. That person

was not defendant, and trial counsel did not make any effort to contact him or subpoena him as a trial witness. Johnson remained available and willing to testify.

¶ 20    The State moved to dismiss the petition. In part, the State argued that defense counsel's decisions constituted reasonable trial strategy and defendant was not prejudiced by any alleged ineffectiveness. As to Johnson, the State argued that his affidavit did not attest either that: (1) he witnessed the shooting; or (2) knew it was the shooter he chased. Thus, the State argued, counsel's decision not to call Johnson, who had no information to offer, was not unreasonable. Further, the State highlighted the efforts counsel took on defendant's behalf, including filing numerous pretrial motions, calling four witnesses to testify on defendant's behalf, presenting multiple exhibits, and vigorously cross-examining the State's witnesses and challenging its evidence.

¶ 21    On April 23, 2020, the trial court advanced defendant's actual-innocence claim to a third-stage hearing. However, it dismissed the remainder of defendant's petition. As to Johnson, the court determined that, although he stated in his two affidavits that he chased someone out of the apartment complex after the shooting, in the first affidavit, he stated that, "to his knowledge" it was not defendant and then, in the second affidavit, claimed the person he chased was not the person he knew to be defendant. The court noted, "[n]ever does he say he saw the shooting or knew he was chasing the shooter. No explanation was given for the changes in affidavits. Nor for the change in his reasonable certainty that it was not [defendant]." The court further found, as to prejudice, "[g]iven that Johnson could not identify the person he chased, I fail to see that this proposed evidence would have any effect on the trial court's finding of guilt."

¶ 22    On July 28, 2022, the court conducted an evidentiary hearing on the actual-innocence claim. Phillips was the sole witness. Ultimately, on September 16, 2022, the court found that, where the testimony remained circumstantial, defendant failed to demonstrate by a preponderance

of the evidence that the evidence was so conclusive it would likely change the result on retrial. Accordingly, the court denied defendant's petition.

¶ 23    Defendant's counsel moved to reconsider on his behalf, while defendant also moved *pro se* to reconsider. The court ultimately allowed counsel's motion to withdraw and, then, on August 29, 2024, denied defendant's motion to reconsider.

¶ 24    Defendant appeals.

¶ 25                                II. ANALYSIS

¶ 26    The Act provides a means by which a defendant may challenge his or her conviction or sentence for violations of federal or state constitutional rights. *People v. Whitfield*, 217 Ill. 2d 177, 183 (2005). The Act sets forth three stages of review. At the first stage, the trial court may summarily dismiss a postconviction petition as frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2022). If the petition is not dismissed, it advances to the second stage. *Id.* § 122-2.1(b).

¶ 27    At the second stage, the State may answer the petition or may move to dismiss it. *Id.* § 22-5. At this stage, the trial court must determine whether the petition and its accompanying documentation make a " 'substantial showing of a constitutional violation.' " *People v. Domagala*, 2013 IL 113688, ¶ 33 (quoting *People v. Edwards*, 197 Ill. 2d 239, 246 (2001)). If so, the defendant is entitled to a third-stage evidentiary hearing, where the trial court acts as factfinder and determines whether the evidence demonstrates that the defendant is entitled to relief. *Id.* ¶ 34.

¶ 28    Here, defendant raises two overarching arguments on appeal, neither of which concerns the court's ruling on his actual-innocence claim after a third-stage hearing. Rather, defendant's first argument concerns the Rule 651(c) certificates filed by postconviction counsel with the amended postconviction petitions. His second argument concerns the second-stage dismissal of

only his ineffective-assistance-of-trial-counsel claim regarding the failure to investigate and call Johnson. In both, he seeks a remand for further postconviction proceedings. For the following reasons, we reject both arguments.

¶ 29                          A. Rule 651(c) Certificates

¶ 30     Defendant argues first that his postconviction counsel filed Rule 651(c) certificates that were facially deficient in that they did not certify that she examined the record from the trial proceedings and made necessary amendments to the *pro se* petition to adequately present his contentions. Specifically, defendant notes that the certificates reflected that counsel "read the reports of proceedings prepared by the official court reporter in the instant cause comprising of 974 pages of transcripts" and "advised [defendant] of [her] proposed amendments to his *pro se* pleadings, which [she] believe[s] are necessary for an adequate presentation of [defendant's] contentions." However, defendant argues that these assertions do not make a clear and affirmative showing that counsel reviewed all of the records pertaining to his claims, particularly where she did not specify which pages she reviewed (when there were "several dozen pages in excess of 974 pages of transcripts preceding the direct appeal") and where she did not specify that she actually *made* the amendments necessary to adequately present defendant's claims. Defendant contends that the language in the certificates does not constitute substantial compliance with Rule 651(c)'s requirements, because the "generic" assertions therein do not reflect substantively that counsel complied with prescribed duties. As such, defendant argues, the certificates' facial invalidity negates any presumption that counsel complied with her duties, and he has no burden to overcome an assumption of their validity or her compliance. Thus, defendant argues that remand for further second-stage postconviction proceedings is appropriate because, once a Rule 651(c) violation is shown, no showing of prejudice is necessary. We disagree.

¶ 31    The Act requires only a reasonable level of assistance from counsel during postconviction proceedings. *People v. Moore*, 189 Ill. 2d 521, 541 (2000). To ensure a reasonable level of assistance, Rule 651(c) requires appointed counsel to (1) consult with the defendant by mail, phone, electronic means, or in person to determine the defendant's claims of constitutional deprivation, (2) examine the record of the challenged proceedings, and (3) make any amendments to the *pro se* petition necessary for an adequate presentation of the defendant's claims. Ill. S. Ct. R. 651(c) (eff. July 1, 2017). Rule 651(c) ensures that postconviction counsel shapes a defendant's allegations into a proper legal form and then presents them to the court. *People v. Profit*, 2012 IL App (1st) 101307, ¶ 18. Counsel's substantial compliance with the rule is sufficient. *Id*. The certificate need not mirror the rule's language. *People v. Landa*, 2020 IL App (1st) 170851, ¶ 45. Rather, the certificate must substantially demonstrate that counsel performed the duties required by the rule. *Id.* ¶ 49. When postconviction counsel files a Rule 651(c) certificate, there is a rebuttable presumption that she provided reasonable assistance of counsel. *People v. Jones*, 2011 IL App (1st) 092529, ¶ 23. A defendant has the burden to overcome that presumption by demonstrating that postconviction counsel failed to substantially comply with the duties required by Rule 651(c). *Profit*, 2012 IL App (1st) 101307, ¶ 19. We review *de novo* whether counsel provided reasonable assistance in compliance with Rule 651(c). *People v. Addison*, 2023 IL 127119, ¶ 17.

¶ 32    Here, defendant's critiques of the Rule 651(c) certificates are unpersuasive. Defendant first takes issue with the fact that counsel certified that she "read the reports of proceedings prepared by the official court reporter in the instant cause comprising of 974 pages of transcripts," but she did not specify which pages of the transcripts she reviewed, and the report of proceedings exceeds 974 pages. We reject this argument. Postconviction counsel is not required to examine

the entire trial record but, instead, must review the only portions relevant to the defendant's claims. *People v. Davis*, 156 Ill. 2d 149, 164 (1993). Here, the entire report of proceedings on appeal consists of 1479 pages, which includes the table of contents and the postconviction proceedings. Thus, our review of the report of proceedings reflects that, setting aside pretrial transcripts (*i.e.*, initial appearances, status hearings, and incidental motions) and those related to postconviction proceedings, the transcripts from trial up to defendant's direct appeal total roughly 700 pages (pages 341-1048). These are the proceedings relevant to defendant's claims. As such, counsel effectively certified that she reviewed almost 300 pages of transcripts *beyond* those relevant to defendant's claims. Thus, it is reasonable to infer that counsel reviewed, at a minimum, those trial and posttrial transcripts relevant to his claims.

¶ 33    Defendant also claims the certificates are facially invalid because they do not reflect that counsel made the changes necessary to adequately present his contentions. Again, we disagree. Counsel certified that she "read and reviewed" the *pro se* petition, advised defendant which of his contentions were "meritorious and which allegations should be withdrawn," and further advised defendant of her own "proposed amendments" to his pleadings, which she believed were "necessary" for an adequate presentation of his claims. Between advising defendant which allegations she believed should be withdrawn, as well as the amendments she deemed necessary, it is reasonable to infer that she made the advised changes. Again, only substantial compliance with Rule 651(c) is necessary. We also note that the two amended petitions counsel filed on defendant's behalf were obviously modified and changed from the *pro se* version, reflecting counsel did, in fact, make changes, and we can reasonably presume, based on the Rule 651(c) certifications, that counsel deemed those changes necessary.

¶ 34    This case is similar to *People v. Richardson*, 382 Ill. App. 3d 248 (2008).  There, the defendant argued that the Rule 651(c) certificate was insufficient to create a presumption of compliance with the rule's requirements because, although counsel certified that she consulted with him by letter and prepared a supplemental petition that "adequately complement[ed]" his claims, the certificate did *not* specifically state that she (1) consulted with him in order to ascertain his contentions of deprivation of constitutional rights, or (2) made any amendments necessary for an adequate presentation of his claims.  *Id.* at 253.  The court rejected the defendant's arguments, noting that only substantial compliance is required, determining that it was reasonable to infer from the certificate that counsel consulted with defendant by letter *in order to* ascertain his contentions, and further inferring that she prepared a supplemental petition *in order to* comply with her duty to make any necessary amendments to adequately present his claims.  *Id.* at 257. Similarly, here, it is reasonable to infer that (1) counsel's certifications that she reviewed 974 pages of transcripts from the reports of proceedings *encompassed* those transcripts relevant to defendant's claims, and (2) when counsel advised defendant of the amendments necessary to adequately present his claims and, then, filed amended petitions, she in fact made the changes she deemed necessary.

¶ 35    We note that the cases upon which defendant relies are distinguishable, as they primarily concern cases where no certificates were filed or certificates that did not reflect that postconviction counsel had reviewed the portions of the record necessary and relevant to the defendant's *particular* claims being raised.  For example, in *People v. Blanchard*, 2015 IL App (1st) 132281, ¶ 18, the certificate did not indicate that counsel examined relevant trial exhibits, and the defendant had raised a claim challenging those very exhibits.  Here, defendant argues only broadly that it is unclear which transcripts counsel reviewed, but not which specific claims are implicated by the

lack of clarity. Similarly, in *People v. Hawkins*, 2020 IL App (3d) 160682, ¶¶ 17-18, it was unclear whether counsel had reviewed an unredacted interrogation video, and the defendant had raised a claim of ineffective assistance of counsel based upon a *Miranda* violation. Again, here, defendant fails to explain how any lack of clarity implicates the specific claims he raised.

¶ 36 Defendant repeatedly argues that he has no burden to show prejudice to his claims, because the certificates are facially invalid. In his reply brief, defendant cites two pages of the record and cursorily suggests that his petition was dismissed due to counsel's failure to set forth his claims; however, not only do those two pages not clearly support his contention,[1] the argument is not further developed and defendant quickly pivots back to his position that he need not demonstrate

---

[1]First, defendant alleges that the State complained in its motion to dismiss his petition of "counsel's failure to include necessary elements in support of [defendant's] claim," but the page cited reflects only the State's argument that defendant failed to demonstrate that certain alleged false testimony was, in fact, false, or that the State *knowingly* presented either false or perjured testimony. This page was simply argument, not an allegation that counsel failed to include necessary elements.

Second, defendant alleges that the court noted "counsel's failure to include necessary elements, including evidence of the effect of a code violation, in its litany of reasons for dismissing most of [his] claims." However, on the page cited, the court's only finding regarding a "code violation," states,

"[Defendant] alleges that [co-defendant] Fields stated in his affidavit that he gave Dijon Grisette his paperwork which was violation of the gang 'code' not to share paperwork for fear of retribution. Again, there is no allegation on the effect the 'code' violation on the trial court's decision regarding the credibility of Fields. In fact, this corroborates James trial testimony."

Thus, we disagree that either reference clearly implicates the question whether counsel substantially complied with Rule 651(c)'s substantive duties.

any prejudice, as remand is required based on the inadequacy of the certificates. We disagree that the certificates are facially invalid, where only substantial compliance is required, a Rule 651(c) certificate need not mirror the rule's language, and there is no requirement that counsel specify exactly which portions of the record she reviewed. *Landa*, 2020 IL App (1st) 170851, ¶ 45; see also *Blanchard*, 2015 IL App (1st) 132281, ¶ 18 ("nothing in Rule 651(c) suggests that the certificate is intended to be a comprehensive recounting of all of an attorney's postconviction efforts"). Counsel certified that she reviewed the reports of proceedings and advised defendant of her proposed amendments, notably those that she deemed necessary to present his claims. Defendant's initial claims involved actual innocence, trial errors, and ineffective assistance of trial and appellate counsel, and, indeed, counsel reviewed 974 pages of transcripts, which constituted virtually all of the report of proceedings that existed up to defendant's direct appeal (1048 total pages, including the table of contents, pretrial hearings, etc.). Thus, the certificates reflect substantial compliance with Rule 651(c), and we reject defendant's argument.

¶ 37                      B. Ineffective-Assistance Claim

¶ 38    Next, defendant alternatively argues that his amended postconviction petition made a substantial showing that his trial counsel provided ineffective assistance by failing to investigate and call Johnson, where his testimony would have impeached Davis's testimony, suggesting that defendant was the hooded offender he chased.[2] Defendant notes that Davis was a highly questionable identification witness whom the trial court described as "suspect." According to

---

[2]We note that, in his postconviction petitions, defendant focused his argument on a claim that Johnson was one of several witnesses who could have countered testimony from witness Robert Moore. He now focuses on Johnson's affidavit as it could have contradicted Davis.

defendant, Johnson's affidavit avers that the person he chased from the scene, *i.e.*, "the presumed shooter," was not defendant and, thus, would have impeached Davis, the sole identification witness at trial. While defendant acknowledges that which witnesses to call for trial is generally a matter of trial strategy, he asserts that counsel cannot be said to have made a strategic choice, where he failed to investigate impeaching evidence. Thus, defendant contends that his petition made a substantial showing that counsel provided objectively unreasonable assistance, where trial counsel advanced a defense theory based on the argument that defendant was incorrectly identified as the shooter but then failed to present significant evidence to support that theory. Defendant argues that the petition made a substantial showing of ineffective assistance of trial counsel, the court erred in dismissing this claim, and we should remand this claim for further proceedings. For the following reasons, we reject defendant's arguments.

¶ 39    We review *de novo* the trial court's dismissal of a postconviction petition without an evidentiary hearing. *People v. Coleman*, 183 Ill. 2d 366, 389 (1998). Further, a defendant who raises an ineffective-assistance-of-counsel claim must satisfy the two-prong test promulgated in *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Specifically, the defendant must show that counsel's performance was objectively unreasonable and that there is a reasonable probability that, but for counsel's unreasonable performance, the result of the underlying proceeding would have differed. *Id.*; *People v. Albanese*, 104 Ill. 2d 504, 525-26 (1984).

¶ 40    "To satisfy the deficient performance prong of *Strickland*, a defendant must show that his counsel's performance was so inadequate 'that counsel was not functioning as the "counsel" guaranteed by the sixth amendment.' " *People v. Dupree*, 2018 IL 122307, ¶ 44 (quoting *People v. Evans*, 186 Ill. 2d 83, 93 (1999)). Courts evaluate performance based on the "prevailing professional norms" at the time of representation (*People v. Domagala*, 2013 IL 113688, ¶ 36),

without the "distorting effects of hindsight" (*Strickland*, 466 U.S. at 689). With respect to the prejudice prong, " '[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.' " *People v. Johnson*, 2021 IL 126291, ¶ 55 (quoting *Strickland*, 466 U.S. at 693). Instead, "[s]atisfying the prejudice prong necessitates a showing of actual prejudice, not simply speculation that [the] defendant may have been prejudiced." *People v. Patterson*, 2014 IL 115102, ¶ 81. A defendant must satisfy both prongs of the *Strickland* test—deficient performance and prejudice—to prevail on an ineffective-assistance-of-counsel claim, and the failure to satisfy either prong invalidates his or her claim. *People v. Veach*, 2017 IL 120649, ¶ 30.

¶ 41     In reviewing an ineffective-assistance claim, this court reviews counsel's actions under the totality of the circumstances of the individual case. *People v. Shatner*, 174 Ill. 2d 133, 147 (1996). Judicial scrutiny of counsel's performance is highly deferential, and we give counsel's trial strategy a strong presumption of reasonable professional assistance. *Strickland*, 466 U.S. at 689. As defendant concedes, decisions regarding what evidence to present and which witnesses to call are generally matters of trial strategy (*People v. Hamilton*, 361 Ill. App. 3d 836, 847 (2005)), although counsel has a duty to make reasonable investigations (*People v. Pecoraro*, 175 Ill. 2d 294, 324-25 (1997)).

¶ 42     Here, we first disagree with defendant's argument that trial counsel rendered deficient performance in failing to investigate Johnson as a potential witness. Defendant notes that Johnson was present at the shooting, and witnesses described him as having chased the shooter from the building. Johnson, defendant urges, would have clarified that the person he chased was not defendant and, thus, would have directly contradicted Davis's testimony that defendant was the person who fled from the scene. However, as noted by the trial court, although Johnson stated in

his two affidavits that he chased someone out of the complex after the shooting, in the first affidavit, he stated that, "to his knowledge" it was not defendant and, then, in the second affidavit, claimed the person he chased was not defendant. The court noted, "[n]ever does he say he saw the shooting or knew he was chasing the shooter. No explanation was given for the changes in affidavits. Nor for the change in his reasonable certainty that it was not [defendant]."

¶ 43    Trial counsel could have reasonably believed that Johnson's testimony that the person he chased was not "to his knowledge" defendant, was of minimal value. See *Strickland*, 466 U.S. at 691 ("A particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."); *People v. Guest*, 166 Ill. 2d 381, 400 (1995) (counsel may strategically decide to not call a witness where any proposed testimony would be of questionable value). Counsel could have reasonably determined that any purported impact of Johnson's testimony would simply be diluted upon cross-examination, when it became apparent that he did not actually see the shooting; did not know if he was chasing the shooter; and could, at most, testify that the person he chased was either not defendant or not "to his knowledge" defendant. Further, in this case, counsel could have reasonably determined that his cross-examination of Davis would sufficiently weaken the impact of her identification testimony, a strategy that was clearly effective, as the trial court found her identification testimony "suspect." Certainly, as a matter of trial strategy, it would not have been unreasonable for counsel to determine instead that alibi witnesses, including Ashley Irvin (defendant was not present) and Shauntel Andrews and Maurice Culpepper (defendant was with them playing video games at Culpepper's house at the time of the shooting), would provide more certain and, thus, more powerful evidence that defendant was not present and was not the person Davis saw running from the building. Accordingly, as defendant's petition did not make a

substantial showing that trial counsel rendered deficient performance by not investigating or presenting evidence from Johnson, the postconviction court did not err in dismissing this ineffective-assistance claim.

¶ 44    Second, although we need not address prejudice, as we have determined trial counsel's performance was not deficient (*Veach*, 2017 IL 120649, ¶ 30 (both prongs must be satisfied)), we reject defendant's contention that the petition made a substantial showing of prejudice from trial counsel's failure to investigate Johnson. Defendant notes that this was a close case, even the trial judge found the sole identification witness questionable, and other witnesses placing him at the scene (but not identifying him as the shooter) were intoxicated or the evidence was based on recanted prior inconsistent statements. In contrast, he claims, and as noted above, witnesses Irvin, Andrews, and Culpepper testified that defendant was *not* present at the time of the shooting.

¶ 45    However, defendant's position is that Johnson would have helped establish that he was not the shooter or, at least, would have impeached Davis's testimony that defendant was the person Johnson chased from the building. Again, Johnson's affidavit did not directly attest that defendant was not the shooter or that he even chased the shooter. In dismissing the claim, the court here found, as to prejudice, "[g]iven that Johnson could not identify the person he chased, I fail to see that this proposed evidence would have any effect on the trial court's finding of guilt." We agree.

¶ 46    Further, we note that, to the extent Johnson's testimony could have lent credence to defendant's argument that he was not at the scene, the testimony would have been cumulative to that of Irvin, Andrews, and Culpepper. (Indeed, even without Johnson's testimony, the trial court clearly discounted Davis's identification testimony). As such, the addition of Johnson's evidence would not have created a reasonable probability that the result of the proceeding would have been different. Accordingly, we conclude that defendant did not establish prejudice, as the proposed

evidence was, essentially, cumulative. See *People v. Smith*, 195 Ill. 2d 179, 190-91 (2000) (rejecting the defendant's claim that his attorney rendered ineffective assistance when he failed to call a witness to provide cumulative testimony, because the defendant could not satisfy the prejudice prong of the *Strickland* test). In sum, defendant's petition did not make a substantial showing of ineffective assistance of trial counsel, and the claim was properly dismissed.

¶ 47                                         III. CONCLUSION

¶ 48     For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 49     Affirmed.